432 So.2d 119 (1983)
Robert SMITH and Vera Smith, Husband and Wife, Appellants,
v.
L. Christian MOGELVANG, M.D., et al., Appellees.
No. 82-892.
District Court of Appeal of Florida, Second District.
April 27, 1983.
Rehearing Denied June 3, 1983.
*120 Joe N. Unger, P.A., Mark J. Feldman, P.A., and Preddy, Kutner & Hardy, Miami, for appellants.
James G. Decker and John F. Stewart of Stewart & Decker, P.A., Fort Myers, for appellees.
LEHAN, Judge.
This medical malpractice case involves whether a negligence issue was tried by implied consent under Rule 1.190(b), Florida Rules of Civil Procedure, and, if so, whether the jury should have been instructed on that issue. Also involved is whether the trial court's failure to use the Florida Standard Jury Instructions was reversible error.
The Smiths sued Dr. Mogelvang and alleged that the doctor's treatment of Mr. Smith fell below a reasonably prudent standard of medical care. The jury returned a verdict for the defendant, and the trial court entered a judgment for defendant. Plaintiffs appeal the judgment, claiming the trial court erred by refusing to give certain jury instructions requested by plaintiff. We affirm.
Surgery performed by defendant was to correct a contracture of Mr. Smith's left hand caused by scars from a severe childhood burn. Plaintiffs' contention was that after the operation the condition of the hand was worse than before. The negligence alleged in the amended complaint was that the doctor (a) "pre-operatively" failed to obtain Mr. Smith's properly informed consent prior to surgery; (b) "pre-operatively" recommended unnecessary and unreasonable surgery; (c) "post-operatively" failed to diagnose, care for and treat a condition called Volkmann's ischemic contracture *121 that allegedly caused further injury to the hand; and (d) "post-operatively" allowed that condition to occur.
Although not alleged in the amended complaint, purported negligence during the surgery was the subject of testimony at trial, as explained below. At the end of the trial, plaintiffs requested that the jury be instructed on whether defendant was negligent in his care and treatment of Mr. Smith, arguing that such an instruction would include the issue of negligence during surgery. Defendant argued that the trial testimony had not added an issue to the case and that the jury instructions should address only the issues raised in the amended complaint. The trial court declined to give the instruction requested by plaintiffs and gave the instructions proposed by defendant.
Following the trial the trial court denied plaintiff's motion to amend the complaint to conform to the evidence by adding an allegation concerning negligence during surgery.
Rule 1.190(b), Florida Rules of Civil Procedure, provides that when issues not raised by pleadings are tried by express or implied consent of the parties, the issues shall be treated in all respects as if they had been raised in the pleadings. Plaintiffs contend that defendant, by not objecting to the foregoing testimony, impliedly consented to litigating the issue of negligence during surgery and that therefore an instruction on that issue should have been given to the jury.
It appears that the testimony could have been construed as involving two aspects of the issue of negligence during surgery. As to one of those aspects (relative most specifically to the subject of Volkmann's ischemic contracture), we agree with plaintiffs that the issue was tried by implied consent, but we cannot say that the trial court's instructions to the jury as to Volkmann's ischemic contracture did not adequately address that aspect. As to the other aspect (subjects of other possible negligence during surgery to the extent that these subjects could be construed as not referring to Volkmann's ischemic contracture), we cannot say that the trial court abused its discretion in a determination that the issue was not tried by implied consent. Therefore, the trial court's refusal to give the requested instruction was not error.
Plaintiffs' counsel persuasively argues that the issue of negligence during surgery was tried by implied consent. It is true that during the trial the attorneys and expert witnesses made various references to the procedures used during surgery. Some of those references, however, appear to be directed at the pleaded issue of whether the defendant allowed the condition known as Volkmann's ischemic contracture to occur. Although the record is not completely clear, it appears that Volkmann's ischemic contracture was presented as a condition that might be caused by procedures taken during surgery or afterwards but would only become apparent some time after surgery. Thus, although the complaint alleged specifically that the defendant allowed this condition to occur "post-operatively," both parties were apparently prepared to, and did, argue and present evidence about the existence and causes of the condition irrespective of whether it occurred during or after surgery.
Rule 1.190(b) provides that the failure to amend pleadings to conform with the evidence shall not affect the result of the trial of issues which have been tried by implied consent. From the testimony about Volkmann's ischemic contracture having occurred or having not occurred during or after surgery, we believe the issue of negligence during surgery in that respect was tried. But, again, we cannot say that the charges given to the jury, without adding the instruction requested by plaintiffs, inadequately instructed them on the issue of whether the defendant had allowed the Volkmann's ischemic contracture to occur. The remainder of this opinion concerns the other possibly separate aspect of purported negligence during surgery, i.e., testimony relative to procedures during surgery which did not refer to Volkmann's ischemic contracture.
*122 Several portions of the expert testimony seem not to have been directed so much at whether or how Volkmann's ischemic contracture occurred as at whether various techniques during the surgery were negligently performed. One of the plaintiffs' witnesses, Dr. Nicholas Azzato, testified that straightening the fingers in one procedure caused the alleged worsened condition of the hand. Defense counsel cross-examined Dr. Azzato about that opinion. In deposition testimony read to the jury following the Azzato testimony, another of plaintiffs' experts, Dr. Richard Gardner, testified that the operation was a deviation from acceptable medical standards of care because a tourniquet was left in place too long. Defense counsel objected to the admission of that Gardner testimony as being beyond the scope of the pleadings. The trial court overruled the objection, stating that previous evidence had made the subject matter of the Gardner testimony an issue in the case. Because neither of those theories of negligence during surgery as advanced by Dr. Azzato or Dr. Gardner were specifically pleaded by plaintiffs, an additional jury instruction on the issue of negligence during surgery would have been appropriate only if the issue had been tried by the implied consent of the parties.
The essence of the broad test generally applied to determine whether an issue has been tried by implied consent is whether the party opposing introduction of the issue into the case would be unfairly prejudiced thereby. See Dixie Farms, Inc. v. Timmons, 323 So.2d 637 (Fla. 3d DCA 1975). Under that broad test, an unpleaded issue is considered as having been tried or not tried by implied consent under two interrelated criteria involving (a) whether the opposing party had a fair opportunity to defend against the issue and (b) whether the opposing party could have offered additional evidence on that issue if it had been pleaded. See International Harvester Credit Corp. v. East Coast Truck, 547 F.2d 888, 890 (5th Cir.1977); Universe Tankships, Inc. v. United States, 528 F.2d 73, 75 (3d Cir.1975); 3 Moore's Federal Practice, section 15.13[2] (2d ed. 1982), involving Federal Rule 15(b) which is the counterpart of Florida Rule 1.190(b). The more of an indication that additional evidence could have been offered by the opposing party if the issue had been pleaded, the greater the potential unfairness to that party from the issue not having been pleaded. And, of course, the converse may apply. Application of the foregoing criteria should determine whether or not there was prejudicial surprise and, accordingly, whether or not a finding of implied consent to the trial of the unpleaded issue would be fair.
Determining the applicability of that test is ordinarily for the sound discretion of the trial court. See Dixie Farms, Inc. v. Timmons, supra. Especially because of the abstruse nature of the expert testimony in this case, the trial court was in a better position than we are to determine the issues addressed by the testimony. We cannot say that the trial court abused its discretion. It is true that the trial court, when denying defendant's foregoing objection to the Gardner testimony, said that the matter had been placed in issue by the evidence, apparently referring to the prior Azzato testimony. But the trial judge, in later denying plaintiffs' motion to amend the amended complaint to conform to the evidence and in refusing to give plaintiffs' requested instruction, changed his mind which he was privileged to do. In our view, it is not shown that he was incorrect in doing so under the totality of the circumstances in the case.
We affirm because we cannot determine from this record that the trial court had no basis to find that defendant lacked a fair opportunity to defend against the issue of negligence during surgery, except to the extent that the foregoing testimony regarding Volkmann's ischemic contracture concerned negligence during surgery. Also, we cannot determine that plaintiffs were unfairly prejudiced. In the final analysis, this simply involves a determination of what was fundamentally fair to each side.
The unpleaded issue appears to have involved a sophisticated, esoteric subject *123 which would call for preparation by the defense with expert witnesses. Although defense counsel briefly questioned defense expert witnesses about the foregoing Azzato and Gardner theories, the questioning, which was directed to whether the defense experts agreed with those theories, was not extensive. It appears to be a fair conclusion that following the foregoing denial of defendant's objection to the Gardner deposition testimony, defense counsel had no alternative but to undertake to address those theories. While it is also true that defense counsel cross-examined Dr. Azzato at trial and Dr. Gardner at deposition, we do not ascribe overwhelming significance to this as constituting proof of implied consent to the additional negligence issue. The cross-examination, to at least a large extent, concerned the pleaded issues. Also, not only was cross-examination under the circumstances appropriate, but defense counsel may well have been remiss if he had failed to do so.
It is additionally true that defense counsel failed to object when the issue was first inserted into the case through the Azzato testimony. However, the defense objection at trial to testimony on that issue, on grounds that it was outside the scope of the pleadings, came on the same day as the Azzato testimony and before the subsequent Gardner deposition testimony was read to the jury. Defense counsel had first objected to the testimony during the Gardner deposition, which had been taken seven days prior to trial, on the grounds that the testimony was outside the scope of the pleadings. Therefore, it does not appear that plaintiffs had been misled into believing prior to trial that the defense had acquiesced to the issue in the case. No reason has been given why plaintiffs' counsel did not move prior to trial to amend the complaint to include the issue of negligence during surgery.
The initial complaint seemed to include negligence during surgery as an issue because it alleged negligence through misuse by defendant of a tourniquet. Although the allegation did not specifically say that the misuse occurred during the surgery, the Gardner deposition testimony indicated that the tourniquet procedure was a part of the surgery. While defendant was on clear notice from the initial complaint that alleged negligence during the surgery was to be an issue in the case, the amended complaint did not contain that allegation. The amended complaint alleged four separate types of negligence which were specifically labeled as being either "post-operative" or "pre-operative," thereby excluding the time bracket encompassing the surgical operation itself. There is, therefore, basis for a conclusion that defendant could have reasonably construed that difference in the pleadings to mean that the plaintiff had abandoned the claim of negligence during surgery.
This is a fairly involved story which would become even more involved if we were to undertake here to describe in more detail the extent to which the expert testimony may or may not have been understood to attribute Volkmann's ischemic contracture to acts occurring during surgery or thereafter. But a moral of this story relative to rule 1.190(b) is as follows. If a plaintiff who has specifically pleaded issues as in this case wishes to raise an unpleaded issue at trial and wishes to reduce the risk of the trial court refusing to permit the issue in the case, plaintiff should make every effort, on the record, to notify defendant and the court in advance of trial or to show why such notification was not possible.
We have referred above to the general tests for application of rule 1.190(b). Of course, that rule was not designed to have an effect of condoning surprise trial tactics, contrary to the purpose of the rules of pleading. At the same time, the existence of rule 1.190(b) shows that the positions of parties in a suit need not in all circumstances be rigidly established by the pleadings. There is a limit, which cannot be precisely delineated (thus there is often substantial appellate court reliance upon trial court discretion), beyond which parties may not depart from their pleadings. As a trial court *124 was quoted in Massey-Ferguson, Inc. v. Santa Rosa Tractor Co., 366 So.2d 90, 93 (Fla. 1st DCA 1979), as having said,
The purpose of pleadings is to make issues. The purpose of issues is for people to know what they've got to meet and get ready to meet it.
The First District in Santa Rosa went on to say that "[T]he trial court correctly held that craftsmanship in pleadings is yet an essential part of litigation... ." Id. at 93.
The record here does not support an accusation against defendant of intentional use of trial tactics predating modern rules of civil procedure. But raising unpleaded issues at trial carries risks, and plaintiffs under the types of circumstances here cannot be heard to complain when the risk becomes a reality.
Rule 1.190(b) was designed to approve litigation of an unpleaded issue consented to by the opposing party. We hesitate to assign to the party raising the new issue the burden of proving consent by the opposing party. At least a rigid rule to that effect may not be appropriate in all cases. The rule does not require such a party to move to amend. It may be that in particular cases the conduct of the parties will properly lead a trial court to feel that that type of burden is on one side or the other. But we will not under the circumstances of this case assign to defendant a negative burden to have proved lack of consent.
In the final analysis, all of this simply means that there must be evidence of consent sufficient to reasonably convince the trial court. There is case law making reference to failure of the opposing party to object as constituting implied consent to the issue raised. See, e.g., Di Teodoro v. Lazy Dolphin Development Co., 418 So.2d 428 (Fla. 3d DCA 1982). But in at least some cases the mere failure of the opposing party to make an objection at one isolated juncture of the case, whether due to mistake or momentary lapse of attentiveness, may not be enough to establish that party's consent under rule 1.190(b).
The entire circumstances of the case are important. It is impossible to list with comprehensiveness all of the potential factors which might bear upon the existence or nonexistence of implied consent. Yet we can refer to some of those types of factors:
(1) Of course, the lack of a timely objection is the most significant factor, especially a failure to object on specific grounds that a newly inserted issue is beyond the scope of the pleadings.
(2) Another factor may be the technical or esoteric nature of the subject matter of the new issue and the corresponding difficulty for the opposing party to effectively cross-examine and respond with contrary evidence.
(3) Whether or not there was justification for the party who is attempting to insert the issue into the case to have failed to plead the issue is another possible factor.
(4) Whether the position taken by the party attempting to insert the issue into the case clearly appears to be meritorious may be an additional factor. See Beefy Trail, Inc. v. Beefy King International, Inc., 267 So.2d 853, 857 (Fla. 4th DCA 1972).
(5) A further factor may be whether there is sufficient time from when the issue is inserted into the case, or when there is clear notice that the issue will be inserted into the case, to the time when the opposing party has the opportunity to offer evidence, within which the opposing party may fairly be expected to prepare his position on the issue. See C.A. Davis, Inc. v. City of Miami, 400 So.2d 536 (Fla. 3d DCA 1981).
(6) The amount of the evidence on the issue to which the opposing party has made no objection may be an additional factor. See Pike v. National Fidelity Life Ins. Co., 377 So.2d 973, 976 (Fla. 3d DCA 1979).
(7) Another factor may be the degree of relevancy of the new issue to the pleaded issues in the case. Massey-Ferguson, Inc. v. Santa Rosa Tractor Co., supra at 92. However, any such relevancy by itself may well not be enough to establish implied consent to try the new issue, absent clear indications that the party introducing evidence was attempting to raise a new issue. See *125 International Harvester Credit Corp. v. East Coast Truck, supra at 890.
(8) The degree, if any, to which the party opposing the new issues should have been aware of the potentiality of the issue in the case e.g., may be a factor, from prior discovery or from other pretrial proceedings. See Ellis v. Arkansas Louisiana Gas Co., 609 F.2d 436 (10th Cir.1979).
Again, the foregoing list of potential factors is not meant to be exhaustive. Whatever the relevant factors may be in a particular case in order to show implied consent, the circumstances should establish lack of unfairness to, or some true acquiescence by, the party opposing the new issue.
Plaintiffs also contend that the trial court erred in failing to use certain standard jury instructions and, instead, used instructions based upon relevant statutes. Plaintiffs argue that the trial court violated Form 1.985, Florida Rules of Civil Procedure, by not giving the reasons for this deviation from the standard instructions.
The forms of Florida Standard Jury Instructions published by the Florida Bar pursuant to authority of the Supreme Court may be used by the trial judges of this state in charging the jury in civil actions to the extent that the forms are applicable unless the trial judge determines that an applicable form of instruction is erroneous or inadequate. In that event he shall modify the form or give such other instruction as he determines necessary to accurately and sufficiently instruct the jury in the circumstances of the action. In that event the trial judge shall state on the record or in a separate order the manner in which he finds the standard form erroneous or inadequate and the legal basis of his finding.
Form 1.985, Fla.R.Civ.P.
In our view the instructions given were not harmful error because they did not improperly mislead or confuse the jury. However, deviation from the standard jury instructions risks error. Of course, the supreme court did not intend that the standard jury instructions rigidly bind trial courts in all circumstances. But no reason appears in this case why the standard instructions were not at least equally as adequate as those given by the trial court.
Unnecessary departures from the standard jury instructions may undermine the unquestionably beneficial effect of those forms on the Florida trial system as a whole. That system depends in large part for its fairness and effective functioning upon reasonably predictable rules and rulings in the conduct of trials. Those instructions "state as accurately as a group of experienced lawyers and judges could state the law of Florida in simple understandable language." In re: Use by the Trial Courts of the Standard Jury Instructions, 198 So.2d 319, 319 (Fla. 1967).
AFFIRMED.
SCHEB, A.C.J., and CAMPBELL, J., concur.