NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


PORT CHARLOTTE HMA, LLC, d/b/a )
PEACE RIVER REGIONAL MEDICAL )
CENTER, a Florida corporation for profit, )
)
        Appellant/Cross-Appellee, )
)
v. )      Case No. 2D15-3434
)
IALA SUAREZ, individually, and as Parent )
and Natural Guardian of K.D.P., a minor, )
)
        Appellee/Cross-Appellant. )
————————————————————)

Opinion filed October 26, 2016.

Appeal from the Circuit Court for Charlotte
County; Lisa S. Porter, Judge.

James E. Looper, Duane L. Cochenour,
and Denise L. Dawson of Hall Booth Smith,
P.C., Atlanta, Georgia, for
Appellant/Cross-Appellee.

Kimberly L. Boldt, Mario R. Giommoni, and
Jeffrey D. Mueller of Boldt Law Firm, P.A.,
Boca Raton; Stuart N. Ratzan and Stuart J.
Weissman of Ratzan Law Group, P.A.,
Miami, for Appellee/Cross-Appellant.

Lincoln J. Connolly of Lincoln J. Connolly
Trials & Appeals, P.A., Miami, for Amicus
Curiae Florida Justice Association.

MORRIS, Judge.

Port Charlotte HMA, LLC, doing business as Peace River Regional Medical Center ("Peace River"), appeals a final judgment entered in favor of Iala Suarez, individually and as the parent of K.D.P., in a medical malpractice action. Peace River raises nine issues on appeal, and Suarez raises two issues on cross-appeal. We find no merit in the majority of the issues raised, but we reverse the final judgment based on the trial court's posttrial granting of a setoff on economic damages. Further, we write to express our agreement with the Fourth District's conclusion that the statutory cap on noneconomic damages is unconstitutional.

## I. FACTS

This case arises from the alleged negligence of several health care providers in connection with the obstetrical care and treatment of Iala Suarez during her pregnancy with her daughter, K.D.P. Suarez presented to Peace River three times between August 17, 2010, and August 29, 2010, with worsening symptoms of early onset preeclampsia. Preeclampsia is a common condition of pregnancy, but it is a progressive disease that is potentially life-threatening. Despite Suarez's worsening symptoms and the increased risk of premature delivery, Suarez's doctors did not promptly begin administering antenatal corticosteroids to enhance the development of K.D.P.'s brain and lungs. Suarez's health care providers also failed to transfer her to a Level III facility equipped to handle a premature birth of less than 33 weeks gestational age. On August 29, 2010, K.D.P. was born at 26 weeks gestational age. K.D.P. has severe neurological impairments that render her physically unable to do basic things; she will be fully dependent on others for the rest of her life and will need 24-hour care.

Suarez alleged that K.D.P.'s neurological impairments were caused by the negligence of her physicians, Peace River, and Peace River's employees. Peace River contended that neither it nor its employees were negligent.

Prior to trial, Suarez settled with one of the physicians, Dr. Guzman. After a lengthy trial, the jury found that the negligence of both Peace River and another physician, Dr. Coffey, was the legal cause of K.D.P.'s injuries. The jury attributed 30 percent of the liability to Peace River and 70 percent of the liability to Dr. Coffey.[1] The jury found that K.D.P. suffered total damages in the amount of $13,550,000, including $1,250,000, in noneconomic damages, and that Suarez suffered total damages in the amount of $9,637,134, including $4,000,000 in noneconomic damages.

After trial, Peace River filed a motion to reduce jury verdict pursuant to section 766.118(3), Florida Statutes (2010), claiming that Peace River's liability for noneconomic damages should be limited to $1.5 million. Suarez responded that the statutory cap on noneconomic damages is unconstitutional. The trial court denied Peace River's motion and declined to apply the statutory cap in 766.118(3).

Peace River also filed a posttrial motion for setoff based on Suarez's pretrial settlement with Dr. Guzman. The trial court granted Peace River's motion and set off the economic damages against Peace River in the amount of $193,395.30. After applying the setoff to Peace River's 30 percent liability for the total damages awarded by the jury to both Suarez and K.D.P., the trial court entered final judgment in favor of Suarez and K.D.P. and against Peace River in the amount of $6,762,744.90.

---

[1]Dr. Coffey was the on-call doctor during Suarez's first two visits to Peace River, and he was also Suarez's treating obstetrician. This appeal does not involve Dr. Coffey, who dismissed his separate appeal of his adverse judgment in 2015.

**II. ANALYSIS**

**A. Statutory Cap on Noneconomic Damages**

In denying Peace River's request to apply the statutory cap for noneconomic damages provided for in section 766.118(3), the trial court relied on North Broward Hospital v. Kalitan, 174 So. 3d 403 (Fla. 4th DCA 2015), review granted, No. SC15-1858. On appeal, Peace River contends that the statute is constitutional and that the Fourth District in Kalitan improperly extended the supreme court's holding in Estate of McCall v. United States, 134 So. 3d 894 (Fla. 2014), to personal injury medical malpractice cases. Suarez responds that the trial court properly applied Kalitan, which in turn properly extended McCall to personal injury cases. The Florida Justice Association filed an amicus curiae brief in support of Suarez and K.D.P., arguing that section 766.118 is unconstitutional under Florida's equal protection clause.

In McCall, the majority of the Florida Supreme Court held that the cap on wrongful death noneconomic damages in section 766.118 violates the equal protection clause of the Florida Constitution. 134 So. 3d at 897, 901 (plurality opinion); id. at 916 (Pariente, J., concurring). The court concluded that

> [t]he statutory cap on wrongful death noneconomic damages fails because it imposes unfair and illogical burdens on injured parties when an act of medical negligence gives rise to multiple claimants. In such circumstances, medical malpractice claimants do not receive the same rights to full compensation because of arbitrarily diminished compensation for legally cognizable claims. Further, the statutory cap on wrongful death noneconomic damages does not bear a rational relationship to the stated purpose that the cap is purported to address, the alleged medical malpractice insurance crisis in Florida.

Id. at 901 (plurality opinion); see id. at 919-20 (Pariente, J., concurring). The court reasoned that the statutory cap "irrationally impacts circumstances which have multiple claimants/survivors differently and far less favorably than circumstances in which there is a single claimant/survivor" because "under section 766.118, the greater the number of survivors and the more devastating their losses are, the less likely they are to be fully compensated for those losses." Id. at 901-02 (plurality opinion); see id. at 921 (Pariente, J., concurring). The court limited its analysis to wrongful death cases, noting that "[t]he legal analyses for personal injury damages and wrongful death damages are not the same." Id. at 900 n.2 (plurality opinion).

However, in Kalitan, 174 So. 3d at 404, the Fourth District considered whether, in light of McCall, "the caps on noneconomic damage awards *in personal injury medical malpractice cases* are similarly unconstitutional." (Emphasis added.) Recognizing that "section 766.118 applies to both personal injury and wrongful death actions," the court went on to conclude that "the section 766.118 caps are unconstitutional not only in wrongful death actions[] but also in personal injury suits as they violate equal protection." 174 So. 3d at 411. The court reasoned that there is no real distinction between the situation in that case—a single claimant in a personal injury case who suffers noneconomic damages in excess of the caps—and the situation in McCall—multiple claimants in a wrongful death case. Id. The court concluded that under section 776.118, "injured parties with noneconomic damages in excess of the caps are not fully compensated." Kalitan, 174 So. 3d at 411.

Turning to the instant case, the trial court properly relied on Kalitan in denying Peace River's motion to apply the statutory cap on noneconomic damages, as

- 5 -

the opinion in <u>Kalitan</u> was the only district court opinion on the issue and was thus binding precedent.  See <u>Pardo v. State</u>, 596 So. 2d 665, 666 (Fla. 1992) ("[I]n the absence of interdistrict conflict, district court decisions bind all Florida trial courts." (citing <u>Weiman v. McHaffie</u>, 470 So. 2d 682, 684 (Fla. 1985)).  Further, we conclude that the <u>Kalitan</u> court properly applied the <u>McCall</u> holding to personal injury medical malpractice actions and we agree with the Fourth District on this issue.

### B. Setoff Against Economic Damages

In granting Peace River's motion for setoff, the trial court relied on section 768.81(3), Florida Statutes (2010), and <u>D'Angelo v. Fitzmaurice</u>, 863 So. 2d 311 (Fla. 2003).  On cross-appeal, Suarez argues that because the legislature eliminated joint and several liability for economic damages after the <u>D'Angelo</u> decision, Peace River is responsible for the damages that correspond to its percentage of fault and Peace River is not entitled to a setoff based on a settlement Suarez reached with another defendant.

In <u>D'Angelo</u>, 863 So. 2d at 314, the supreme court recognized that prior to the enactment of section 768.81, the existing setoff statutes "presuppose[d] the existence of multiple defendants jointly and severally liable for the same damages."  But in 1997, Florida enacted section 768.81(3), which read as follows:

> APPORTIONMENT OF DAMAGES.—In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.

Thus, by enacting section 768.81, Florida "eliminate[d] joint and several liability for noneconomic damages and limit[ed] joint and several liability for economic damages." 863 So. 2d at 314. The court held that based on the language of the statute,

> it is appropriate to set off against the economic damages portion of an award against one tortfeasor in a medical malpractice action the economic damages portion of any settlement recovered from a settling tortfeasor for the same incident causing the injury where the settling tortfeasor was not included on the verdict form.

Id. at 319.

However, in 2006, the Florida Legislature amended section 768.81(3) and specifically deleted the provision applying joint and several liability to economic damages. Ch. 2006-6 at 191, § 1, Laws of Fla. The current version of this subsection now reads: "[T]he court shall enter judgment against each party on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability." § 768.81(3); see T & S Enters. Handicap Accessibility, Inc. v. Wink Indus. Maintenance & Repair, Inc., 11 So. 3d 411, 412 (Fla. 2d DCA 2009) (recognizing that joint and several liability was eliminated in section 768.81(3)). Therefore, the holding in D'Angelo, which was based on specific language authorizing a setoff against economic damages on the basis of joint and several liability, does not apply in this case, and the trial court erred in applying a setoff to the economic damages awarded against Peace River.

### III. CONCLUSION

We reverse the final judgment and the order granting setoff and remand for the trial court to reenter judgment in favor of Suarez without applying the setoff amount of $193,395.30. In all other respects, the rulings of the trial court are affirmed.

Affirmed in part; reversed in part; remanded.


KELLY and KHOUZAM, JJ., Concur.