754 So.2d 708 (2000)
Joshua B. DUNCAN, Petitioner,
v.
Michael W. MOORE and The Florida Parole Commission, Respondents.
No. SC95628.
Supreme Court of Florida.
March 23, 2000.
*710 Joshua B. Duncan, Polk City, Florida, Petitioner, pro se.
William L. Camper, General Counsel, and Kim M. Fluharty, Assistant General Counsel, Florida Parole Commission, Tallahassee, Florida; and Judy Bone, Assistant General Counsel, Department of Corrections, Tallahassee, Florida, for Respondent.
PER CURIAM.
Joshua B. Duncan petitions this Court for writ of habeas corpus. We have jurisdiction. Art. V, § 3(b)(9), Fla. Const.
Because we find this case is controlled by our decision in Dowdy v. Singletary, 704 So.2d 1052 (Fla.1998), we deny the petition. We write to make clear that our decision in Dowdy applies equally to both Control and Conditional Releasees, and to clarify some additional issues not specifically addressed in Dowdy.

FACTS AND ARGUMENT
As pertinent to the instant inquiry, Duncan is serving a prison sentence for an aggravated battery which was committed on May 21, 1994. Duncan has been informed that when he is released from prison, he will be placed under Conditional Release supervision. Duncan objects, asserting that when he is released, his release should not be made conditional upon his complying with certain terms and conditions but, rather, it should be unconditional. He asserts that his placement on supervision will result in (1) the improper forfeiture of earned gain time; (2) violation of his double jeopardy rights; (3) violation of his ex post facto rights; (4) violation of his due process rights; (5) violation of his equal protection rights; (6) imposition of cruel and unusual punishment.

ANALYSIS
Contrary to Duncan's assertion, his placement on Conditional Release supervision will not automatically result in the forfeiture of earned gain time. When Duncan has served enough time and earned enough gain time, he will be released from prison. See § 944.291(2), Fla. Stat. (1999). Nevertheless, as we have explained before, the retention of gain time is now dependent not only upon satisfactory behavior while in prison but also upon satisfactory behavior while under supervision after release. See Dowdy v. Singletary, 704 So.2d 1052 (Fla.1998). Since 1988, the law has provided that for certain more "at risk" inmates, while gain time awards will shorten the length of their incarceration, they will have to remain under supervision after release from prison for a period of time equal to the amount of gain time awarded. See Rivera v. Singletary, 707 So.2d 326, 327 (Fla.1998)(describing program as "an additional post-prison supervision program for certain types of offenders that the legislature has determined to be in need of further supervision after release"); see also §§ 947.1405, 944.28(1), 944.291(2), Fla. Stat. (1999); Lincoln v. Florida Parole Comm'n, 643 So.2d 668, 670 (Fla. 1st DCA 1994).
The Legislature has determined that habitual offenders and offenders who have committed certain types of violent offenses after having served a prior commitment to prison should receive supervision after release. See § 947.1405, Fla. Stat. (1999). This supervision should help these former inmates in bridging the gap between prison and the outside world. To encourage releasees to comply with the terms and conditions of supervision, the program provides that if the releasee fails to do so, the releasee will be returned to prison and his gain time will be forfeited. Therefore, while Duncan's gain time will not automatically be forfeited when he is released to *711 Conditional Release supervision, if Duncan fails to satisfactorily complete his supervision, then his gain time will be forfeited. See § 944.28(1), Fla. Stat. (1999).

DOUBLE JEOPARDY
Duncan also seems to believe that when he is released from prison he will have completely served his sentence and the imposition of supervision and the possible revocation of that supervision could result in his having to serve his sentence "over again," which he believes would constitute a violation of double jeopardy. See art. 1 § 9, Fla. Const.; U.S. Const. amend. V. We disagree.
The statutes affecting Duncan's sentence were in effect when he committed his crime and when he pled guilty. By statute, Duncan's sentence has always included a period of supervision. See § 947.1405, Fla. Stat. (1999). Duncan's sentence does not expire when the incarcerative portion of his sentence ends; it only expires when the entire sentence, including the supervisory period, has been satisfactorily completed. See §§ 947.1405, 944.28(1), 944.291(2), Fla. Stat. (1989-1999).
It has long been accepted that the placement of an inmate on supervision after a period of time incarcerated is a legitimate form of punishment for crime. See Morrissey v. Brewer 408 U.S. 471, 475, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)(discussing the concept of parole). Also accepted has been the notion that if the releasee violates his or her supervision, the releasee may be returned to prison to finish serving the releasee's original sentence. Id. at 478, 92 S.Ct. 2593. Further, in some types of revocation proceedings, the releasee may be subjected to new or enhanced punishment without violating double jeopardy because it is the releasee's intervening misconduct which triggers the new sentence. See Lawson v. State, 751 So.2d 623, 624 (Fla. 4th DCA 1999)(discussing community control revocation); Franklin v. State, 526 So.2d 159 (Fla. 5th DCA 1988)(same), approved, 545 So.2d 851 (Fla.1989), disapproved in part on other grounds, State v. Watts, 558 So.2d 994 (Fla.1990).
Therefore, we find that requiring that a Conditional Release eligible inmate finish his or her sentence by satisfactorily completing a period of post-prison supervision equal to the amount of gain time awarded does not violate double jeopardy. Further, returning a Conditional Release violator to prison to continue serving his or her sentence without credit for the prior awarded gain time does not constitute a violation of double jeopardy.[1]See also Gibbs v. Wainwright, 302 So.2d 175 (Fla. 2d DCA 1974)(concerning forfeiture of gain time upon parole revocation).

EX POST FACTO
Petitioner Duncan also asserts that subjecting him to Conditional Release constitutes an ex post facto violation. See art. 1 § 10, Fla. Const.; U.S. Const. art. I § 9. Again, we must disagree.
It is well settled that the Ex Post Facto Clause is triggered when a later-enacted law "increases punishment beyond what was prescribed when the crime was consummated." Lynce v. Mathis, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (emphasis added). To violate the Ex Post Facto Clause, such a law need only make the punishment more onerous than the law in effect at the time the offense was committed. See Gomez v. Singletary, 733 So.2d 499, 507 (Fla.1998), cert. denied, ___ U.S. ___, 120 S.Ct. 67, 145 L.Ed.2d 58 (1999). Nevertheless, the *712 Conditional Release statute and its corresponding gain time forfeiture statute had gone into effect years before Duncan committed the crime of aggravated battery on May 21, 1994. Therefore, there is no retrospective application of a later-enacted statute to Duncan, and thus there is no ex post facto violation.

DUE PROCESS
Duncan also claims that his placement on Conditional Release constitutes a violation of due process because it improperly takes away his vested liberty interest in the gain time he has been awarded. See art. 1 § 9, Fla. Const.; U.S. Const. amend. XIV, § 1. We disagree.
First of all, as we have previously noted, even after having received gain time, the retention of that gain time has always been contingent upon the inmate's continued good behavior while on supervision. Therefore, Duncan does not have a vested liberty interest in his gain time, he only has a conditional interest. Duncan may retain his gain time only if he complies with the conditions under which it was given. Since 1988, the gain time statutes have provided that when inmates subject to Conditional Release receive gain time, that gain time must be served as supervision upon release and is subject to forfeiture if the releasee violates the terms and conditions of his or her supervision. See §§ 947.1405, 944.28(1), Fla. Stat. (1999). Furthermore, even if a warrant is issued after Duncan is released on Conditional Release charging him with violation of the terms and conditions of his supervision, by statute and rule, Duncan must be provided with the opportunity to have a due process hearing. In that hearing the State will have to prove that Duncan did indeed violate his supervision before it can revoke his release and forfeit his gain time. See § 947.141, Fla. Stat. (1999); Fla. Admin. Code R. 22-23.011(4). Therefore, if Duncan loses his gain time, it will only be after due process of law. Thus, Duncan's placement on Conditional Release does not constitute a violation of due process.

EQUAL PROTECTION
Duncan also asserts that his placement on Conditional Release will result in a violation of equal protection because other prisoners are not placed on Conditional Release. See art. 1 § 2, Fla. Const.; U.S. Const. amend. XIV, § 1.
Equal protection is not violated merely because some persons are treated differently than other persons. It only requires that persons similarly situated be treated similarly. See City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). In the absence of a fundamental right or a protected class, equal protection demands only that a distinction which results in unequal treatment bear some rational relationship to a legitimate state purpose. Id. at 440-41, 105 S.Ct. 3249; See also Durso v. Rowe, 579 F.2d 1365, 1372 (7th Cir. 1978). This is known as the rational basis test. Since there is no fundamental right or suspect class at issue here, the State need only meet that test.
As we have observed before, inmates subject to Conditional Release are those which, due to their prior criminal history, have been deemed by the Legislature to need additional supervision after release from prison. Accordingly, they are not similarly situated to inmates who do not have similar criminal histories and are not subject to Conditional Release. The Conditional Release statute clearly has two purposes: (1) rehabilitation of the releasee and (2) protection of society. If the releasee's supervisor sees that the releasee has failed to comply with the terms and conditions of his or her release, thereby indicating that the releasee is not amenable to further supervision, the releasee can be returned to prison to continue serving his or her sentence under a more secure setting. For releasees, the knowledge that they can be returned to prison relatively easily if they begin to wander astray would *713 clearly be a rather persuasive incentive for these former inmates to strive to become law-abiding citizens. We find that attempting to dissuade releasees from returning to a life of crime is clearly a legitimate state purpose. Further, we find that maintaining such releasees under supervision is a reasonable means of achieving that goal. Therefore, we find that the State has satisfied the rational basis test and thus there is no equal protection violation.

CRUEL AND UNUSUAL PUNISHMENT
Finally, Duncan asserts that his placement on Conditional Release and any subsequent revocation that might occur will result in the imposition of cruel and unusual punishment. See art. 1 § 17, Fla. Const.; U.S. Const. amend. VIII.
We find this argument to be utterly meritless. Duncan committed an aggravated battery on his victim with a baseball bat. He was sentenced to 42 months in prison for that crime. Due to the award of gain time, Duncan will be released from prison before actually serving 42 months. The remaining time will be served on supervision. Even if Duncan violates his supervision and is returned to prison to serve 42 months "day-for-day," we can hardly say that such a sentence constitutes "cruel and unusual punishment." Aggravated battery is a second-degree felony and the statutory maximum is 15 years in prison. See §§ 784.045(2), 775.082(3)(c), Fla. Stat. (1999). Duncan's sentence is considerably less than the maximum. A criminal penalty constitutes cruel and unusual punishment if it, among other things, "involves the unnecessary and wanton infliction of pain," Provenzano v. Moore, 744 So.2d 413, 415 (Fla.1999), cert. denied, ___ U.S. ___, 120 S.Ct. 1222, 145 L.Ed.2d 1122 (2000), or otherwise "shocks the conscience and sense of justice of the people," United States v. Rosenberg, 195 F.2d 583, 608 (2d Cir.1952), cert. denied, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652 (1952), based on "evolving standards of decency." Provenzano, 744 So.2d at 415. We do not believe that Duncan's punishment meets any of those tests. Accordingly, we find that imposition of Conditional Release supervision does not result in cruel and unusual punishment.

CONCLUSION
Therefore, based upon the foregoing reasons we hold that imposition of a period of Conditional Release supervision after release from prison in which the releasee will have to comply with reasonable terms and conditions or be returned to prison to continue serving the eligible sentence without credit for gain time awarded does not violate any of the releasee's constitutional rights under the Double Jeopardy Clause, the Ex Post Facto Clause, the Due Process Clause, or the Equal Protection Clause; nor does it impose cruel and unusual punishment. Accordingly, we deny the instant petition for writ of habeas corpus.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] Of course, the releasee's underlying criminal offense must have been committed on or after the effective date of the statute providing for forfeiture of gain time upon Conditional Release revocation. See Dowdy v. Singletary, 704 So.2d 1052, 1053 (Fla.1998); § 974.141; 944.28(1), Fla. Stat. (1999). The Conditional Release statute covers eligible offenders whose relevant offense dates were committed on or after October 1, 1988. See § 947.1405(2)(a), Fla. Stat. (1999).