# Supreme Court of Florida

_____

No. SC15-1858
_____

**NORTH BROWARD HOSPITAL DISTRICT, etc., et al.,**
Appellants,

vs.

**SUSAN KALITAN,**
Appellee.

[June 8, 2017]

PER CURIAM.

This case is before the Court on appeal from a decision of the Fourth District

Court of Appeal, North Broward Hospital District v. Kalitan, 174 So. 3d 403 (Fla.

4th DCA 2015), which held section 766.118, Florida Statutes (2011), to be invalid.

We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the following reasons,

we affirm the Fourth District's decision and hold that the caps on personal injury

noneconomic damages in medical negligence actions provided in section 766.118

violate the Equal Protection Clause of the Florida Constitution.[1]

---

1. Because our conclusion regarding the invalidity of section 766.118 is
dispositive, we find it unnecessary to address the remaining constitutional

## FACTS AND PROCEDURAL HISTORY

This case arose after complications from carpal tunnel surgery left appellee Susan Kalitan severely injured. After trial, Kalitan's noneconomic damages were capped by sections 766.118(2) and (3). Section 766.118(2) provides that in a cause of action for personal injury arising from the medical negligence of practitioners, the noneconomic damages award shall not exceed $500,000 per claimant; however, if the negligence resulted in a permanent vegetative state or death, or if the negligence caused a catastrophic injury and a manifest injustice would occur unless increased damages are awarded, then damages may be awarded in an amount up to $1 million. Section 766.118(3) similarly limits damages to $750,000 and $1.5 million, respectively, when the injury results from the negligence of nonpractitioners. The Fourth District held that the statutory caps on noneconomic damage awards in personal injury medical malpractice actions are unconstitutional, relying on this Court's decision in Estate of McCall v. United States, 134 So. 3d 894 (Fla. 2014), which held that the cap on wrongful death noneconomic damages provided in section 766.118 violates the Equal Protection Clause of the Florida Constitution. Art. I, § 2, Fla. Const.

---

challenges. Additionally, we decline to reach the issues raised by the parties that do not fall under this Court's mandatory jurisdiction.

The Fourth District presented the following facts of Kalitan's injury and the ensuing medical malpractice lawsuit:

## I. Background

In 2007, Plaintiff went to defendant North Broward Hospital District ("the Hospital") for outpatient surgery to treat carpal tunnel syndrome in her wrist. The surgery required Plaintiff to be placed under general anesthesia. . . .

During intubation, as part of the administration of anesthesia for Plaintiff's surgery, one of the tubes perforated Plaintiff's esophagus. Prior to the surgery and intubation, Plaintiff had no problems with her esophagus, nor did she complain of any bodily pain unassociated with her carpal tunnel. . . .

When Plaintiff awoke in recovery, she complained of excruciating pain in her chest and back. The Anesthesiologist was notified, and, unaware of the perforated esophagus, he ordered the administration of a drug for the chest pain and concluded that there was no issue with Plaintiff's heart. Plaintiff was discharged from the hospital later that afternoon. Plaintiff's neighbor picked her up and drove her home.

The neighbor returned the next day to check on Plaintiff. Plaintiff was unresponsive, so the neighbor took her to the emergency room of a nearby hospital. Upon diagnosis of the problem, Plaintiff was rushed into lifesaving surgery to repair her esophagus. Plaintiff's next memory was waking up in the intensive care unit after being in a drug-induced coma for several weeks. Plaintiff had additional surgeries and underwent intensive therapy to begin eating again and regain mobility. She testified that she continues to suffer from pain throughout the upper half of her body and from serious mental disorders as a result of the traumatic incident and the loss of independence because of her body's physical limitations following this incident.

## II. Plaintiff's Medical Malpractice Lawsuit

Plaintiff filed a medical negligence action against Defendants. The issues at trial encompassed personal liability and vicarious liability for Plaintiff's injuries, as well as the extent of the injuries and whether they amounted to "catastrophic injury" under section

766.118(1)(a). At the end of Plaintiff's case, all parties moved for directed verdict on various grounds. Primarily, Defendants contended that Plaintiff failed to meet the threshold for a determination of catastrophic injury. . . .

Ultimately, the trial court decided to submit [] two highly contested issues to the jury as questions on the verdict form. . . . With regard to catastrophic injury, the jury was asked to determine whether Plaintiff suffered a "permanent impairment constituted by either . . . [s]pinal cord injury involving severe paralysis of an arm, a leg, or the trunk . . . [or] [s]evere brain or closed-head injury evidenced by a severe episodic neurological disorder."

. . . [T]he jury determined that Plaintiff suffered catastrophic injury in the form of a "[s]evere brain or closed-head injury evidenced by a severe episodic neurological disorder" and awarded Plaintiff $4,718,011 in total damages. The noneconomic damage awards were $2 million for past pain and suffering and $2 million for future pain and suffering.

Multiple post-trial motions were filed, with Defendants primarily challenging the jury's finding of catastrophic injury by way of severe brain or closed-head injury. Defendants argued that there was no evidence in the record to support the jury's finding of such an injury. . . . All motions challenging the finding of catastrophic injury [] were denied. The court also rejected Plaintiff's challenge that the section 766.118 caps on noneconomic damages in medical negligence actions were unconstitutional.

The trial court issued a written final judgment as to damages. . . . The court [] limited the noneconomic damage awards by the caps provided in section 766.118, Florida Statutes (2011), after applying the increased cap for the finding of catastrophic injury, because the court found that competent substantial evidence existed in the record to support a finding of catastrophic injury under the statutory definition as determined by the jury. As such, the noneconomic damages award of $4 million was reduced by close to $2 million by the "[l]imitation on noneconomic damages for negligence of practitioners" under section 766.118(2) and "[l]imitation on noneconomic damages for negligence of nonpractitioner defendants" under section 766.118(3), Florida Statutes (2011). Furthermore, the noneconomic damages award was further

reduced by about $1.3 million, as the Hospital's share of liability was capped at $100,000 by virtue of the hospital's status as a sovereign entity. § 768.28, Fla. Stat. (2007).

Kalitan, 174 So. 3d at 405-07.

In its analysis with regard to Kalitan's constitutional challenge to the caps, the Fourth District observed that a majority of this Court in McCall determined that the cap on wrongful death noneconomic damages under section 766.118 violates the right to equal protection guaranteed by article I, section 2, of the Florida Constitution. The district court described the facts of McCall and highlighted relevant portions of the plurality and concurring in result opinions regarding the arbitrariness of the cap and the lack of a legitimate government interest justifying the cap. Although the Fourth District recognized that the decision in McCall was limited to a determination that the cap on noneconomic damages is unconstitutional in the context of wrongful death actions, it observed that section 766.118 applies to both wrongful death and personal injury actions. Thus, the district court applied this Court's rationale in McCall to the personal injury context, concluding that "McCall mandates a finding that the caps in section 766.118 personal injury cases are similarly unconstitutional." Id. at 405.

Therefore, the Fourth District directed the trial court to reinstate the total damages award as found by the jury. This appeal followed.[2]

## STATUTORY PROVISION

The issue before this Court concerns the caps on personal injury noneconomic damages in medical negligence actions provided in section 766.118, which states:

> (2) LIMITATION ON NONECONOMIC DAMAGES FOR NEGLIGENCE OF PRACTITIONERS.—
>
> (a) With respect to a cause of action for personal injury or wrongful death arising from medical negligence of practitioners, regardless of the number of such practitioner defendants, noneconomic damages shall not exceed $500,000 per claimant. No practitioner shall be liable for more than $500,000 in noneconomic damages, regardless of the number of claimants.
>
> (b) Notwithstanding paragraph (a), if the negligence resulted in a permanent vegetative state or death, the total noneconomic damages recoverable from all practitioners, regardless of the number of claimants, under this paragraph shall not exceed $1 million. In cases that do not involve death or permanent vegetative state, the patient injured by medical negligence may recover noneconomic damages not to exceed $1 million if:
>
> 1. The trial court determines that a manifest injustice would occur unless increased noneconomic damages are awarded, based on a finding that because of the special circumstances of the case, the noneconomic harm sustained by the injured patient was particularly severe; and

---

2. While this case was pending, the Second District Court of Appeal issued Port Charlotte HMA, LLC v. Suarez, 210 So. 3d 187 (Fla. 2d DCA 2016), in which it agreed with the Fourth District's conclusion that the statutory caps on personal injury noneconomic damages are unconstitutional.

2. The trier of fact determines that the defendant's negligence caused a catastrophic injury to the patient.

(c) The total noneconomic damages recoverable by all claimants from all practitioner defendants under this subsection shall not exceed $1 million in the aggregate.

(3) LIMITATION ON NONECONOMIC DAMAGES FOR NEGLIGENCE OF NONPRACTITIONER DEFENDANTS.—

(a) With respect to a cause of action for personal injury or wrongful death arising from medical negligence of nonpractitioners, regardless of the number of such nonpractitioner defendants, noneconomic damages shall not exceed $750,000 per claimant.

(b) Notwithstanding paragraph (a), if the negligence resulted in a permanent vegetative state or death, the total noneconomic damages recoverable by such claimant from all nonpractitioner defendants under this paragraph shall not exceed $1.5 million. The patient injured by medical negligence of a nonpractitioner defendant may recover noneconomic damages not to exceed $1.5 million if:

1. The trial court determines that a manifest injustice would occur unless increased noneconomic damages are awarded, based on a finding that because of the special circumstances of the case, the noneconomic harm sustained by the injured patient was particularly severe; and

2. The trier of fact determines that the defendant's negligence caused a catastrophic injury to the patient.

(c) Nonpractitioner defendants are subject to the cap on noneconomic damages provided in this subsection regardless of the theory of liability, including vicarious liability.

(d) The total noneconomic damages recoverable by all claimants from all nonpractitioner defendants under this subsection shall not exceed $1.5 million in the aggregate.

§§ 766.118(2), (3), Fla. Stat.

## ESTATE OF MCCALL V. UNITED STATES

To determine the constitutionality of this statute, we first examine McCall, in which we held that the cap on wrongful death noneconomic damages provided in section 766.118 is unconstitutional. 134 So. 3d at 897. The case involved an action brought by the Estate of Michelle McCall, who died as a result of medical negligence following the birth of her son. In McCall, we addressed certified questions from the United States Court of Appeals for the Eleventh Circuit and considered whether the cap on wrongful death noneconomic damages violates the right to equal protection. The plurality opinion concluded that section 766.118 violates the Equal Protection Clause because the statutory cap "imposes unfair and illogical burdens on injured parties" and "does not bear a rational relationship to the stated purpose that the cap is purported to address, the alleged medical malpractice insurance crisis in Florida." Id. at 901.

In analyzing the arbitrary distinctions created by the statute, the plurality opinion concluded that the cap "irrationally impacts circumstances which have multiple claimants/survivors differently and far less favorably than circumstances in which there is a single claimant/survivor . . ." and that "under section 766.118, the greater the number of survivors and the more devastating their losses are, the less likely they are to be fully compensated for those losses." Id. at 901-02.

Additionally, the plurality opinion described how the cap on noneconomic damages arbitrarily discriminates between slightly and severely injured plaintiffs while benefitting the tortfeasor. The opinion presented the following hypothetical from the Supreme Court of Illinois:

> In the first example . . . three plaintiffs are injured as a result of the same tortfeasor's negligence. Plaintiff A is injured moderately, and suffers pain, disability and disfigurement for a month. Plaintiff B is severely injured and suffers one year of pain and disability. Plaintiff C is drastically injured, and suffers permanent pain and disability. . . . [I]t is further assumed that a jury awards plaintiffs A and B $100,000 in compensatory damages for noneconomic injuries. Plaintiff C receives $1 million for his permanent, lifelong pain and disability.
>
> . . . With respect to plaintiff C, [the challenged legislation] arbitrarily and automatically reduces the jury's award for a lifetime of pain and disability, without regard to whether or not the verdict, before reduction, was reasonable and fair.
>
> The tortfeasors in this example are also treated differently, without any justification. The tortfeasor who injures plaintiffs A and B is liable for the full amount of fairly assessed compensatory damages. In contrast, [the challenged legislation] confers a benefit on the similarly situated tortfeasor who injures plaintiff C. This tortfeasor pays only a portion of fairly assessed compensatory damages because of the limitation [on noneconomic damages]. Therefore, the statute discriminates between slightly and severely injured plaintiffs, and also between tortfeasors who cause severe and moderate or minor injuries.

Id. at 902-03 (quoting Best v. Taylor Mach. Works, 689 N.E.2d 1057, 1075 (Ill. 1997)).

Based on this analysis, the plurality opinion stated:

Section 766.118, Florida Statutes, has the effect of saving a modest amount for many by imposing devastating costs on a few—those who are the most grievously injured, those who sustain the greatest damage and loss, and multiple claimants for whom judicially determined noneconomic damages are subject to division and reduction simply based upon the existence of the cap. Under the Equal Protection Clause of the Florida Constitution, and guided by our decision in [St. Mary's Hospital, Inc. v. Phillipe, 769 So. 2d 961 (Fla. 2000)], we hold that to reduce damages in this fashion is not only arbitrary, but irrational, and we conclude that it "offends the fundamental notion of equal justice under the law."

Id. at 903 (quoting Phillipe, 769 So. 2d at 972).

The plurality opinion additionally concluded that the cap on noneconomic damages "bears no rational relationship to a legitimate state objective, thereby failing the rational basis test." Id. at 905. The Florida Legislature's purpose in enacting the statute was to address the medical malpractice insurance crisis. See ch. 2003–416, § 1, Laws of Fla., at 4035. "The Legislature asserted that the increase in medical malpractice liability insurance premiums has resulted in physicians leaving Florida, retiring early from the practice of medicine, or refusing to perform high-risk procedures, thereby limiting the availability of health care." McCall, 134 So. 3d at 906. However, the plurality opinion determined that the findings by the Legislature as to the existence of a medical malpractice crisis were not fully supported by available data.

The plurality opinion then declared that even if the Legislature's findings were true, "section 766.118 still violates Florida's Equal Protection Clause because

- 10 -

the available evidence fails to establish a rational relationship between a cap on noneconomic damages and alleviation of the purported crisis." Id. at 909. The opinion observed a lack of evidence establishing a direct correlation between caps and reduced malpractice premiums. Thus, it adopted the reasoning of the Texas Supreme Court, which addressed whether caps on damages would lower insurance premiums, observing: "[i]n the context of persons catastrophically injured by medical negligence, we believe it is unreasonable and arbitrary to limit their recovery in a speculative experiment to determine whether liability insurance rates will decrease." Id. at 912 (quoting Lucas v. United States, 757 S.W.2d 687, 691 (Tex. 1988)).

Furthermore, the plurality opinion asserted that even if there existed a medical malpractice crisis when the statute was enacted, "[c]onditions can change, which remove or negate the justification for a law, transforming what may have once been reasonable into arbitrary and irrational legislation." Id. at 913. After reviewing current data, the opinion declared that "no rational basis exists to justify continued application of the noneconomic damages cap of section 766.118." Id. Ultimately, the plurality opinion concluded that "the cap on noneconomic damages serves no purpose other than to arbitrarily punish the most grievously injured or their surviving family members." Id. at 914-15.

- 11 -

The concurring in result opinion agreed that "the arbitrary reduction of survivors' noneconomic damages in wrongful death cases based on the number of survivors lacks a rational relationship to the goal of reducing medical malpractice premiums." Id. at 916 (Pariente, J., concurring in result). The concurring in result opinion observed that "the only asserted legitimate State interest is the alleviation of rising medical malpractice insurance premiums paid by the affected doctors." Id. at 919 (Pariente, J., concurring in result). However, the opinion determined that "there is no mechanism in place to assure that savings are actually passed on from the insurance companies to the doctors." Id. (Pariente, J., concurring in result) (citing plurality op. at 911-12 (Lewis, J.)). Moreover, the concurring in result opinion agreed that a legislative finding that there was a medical malpractice crisis does not establish a permanent condition because a statute may become constitutionally invalid due to changed conditions. Id. at 920 (Pariente, J., concurring in result) (citing Mizrahi v. N. Miami Med. Ctr., Ltd., 761 So. 2d 1040, 1043 (Fla. 2000) (Pariente, J., dissenting)). Thus, it concluded that there was no evidence of a continuing medical malpractice crisis that would justify the arbitrary application of the statutory cap in wrongful death cases. Id. at 921 (Pariente, J., concurring in result).

We now consider the applicability of McCall to the personal injury context at issue in the present case.

## EQUAL PROTECTION

"The determination of a statute's constitutionality and the interpretation of a constitutional provision are both questions of law reviewed de novo." Shands Teaching Hosp. & Clinics, Inc. v. Mercury Ins. Co. of Fla., 97 So. 3d 204, 209 (Fla. 2012) (quoting Fla. Dept. of Revenue v. City of Gainesville, 918 So. 2d 250, 256 (Fla. 2005)).

The Florida Constitution declares that "[a]ll natural persons, female and male alike, are equal before the law." Art. I, § 2, Fla. Const. "The constitutional right of equal protection of the laws means that everyone is entitled to stand before the law on equal terms with, to enjoy the same rights as belong to, and to bear the same burden as are imposed upon others in a like situation." Caldwell v. Mann, 26 So. 2d 788, 790 (1946). "Unless a suspect class or fundamental right protected by the Florida Constitution is implicated by the challenged provision, the rational basis test will apply to evaluate an equal protection challenge." McCall, 134 So. 3d at 901. "To satisfy the rational basis test, a statute must bear a rational and reasonable relationship to a legitimate state objective, and it cannot be arbitrary or capriciously imposed." Id. (citing Dep't of Corr. v. Fla. Nurses Ass'n, 508 So. 2d 317, 319 (Fla. 1987)); see also Amerisure Ins. Co. v. State Farm Mut. Auto. Ins. Co., 897 So. 2d 1287, 1290 n.2 (Fla. 2005). Where a challenger fails to meet this

burden, the statute must be upheld.  Fla. High Sch. Activities Ass'n, Inc. v. Thomas, 434 So. 2d 306, 308 (Fla. 1983).

Here, we address whether sections 766.118(2) and 766.118(3) violate the right to equal protection guaranteed by the Florida Constitution.  Kalitan is not a member of a suspect class; thus the rational basis test applies.  Appellants argue that the statutory caps in single claimant personal injury actions are constitutional and that the Fourth District erred in determining that the reasoning in McCall controls.  However, we disagree and hold that the caps in section 766.118 violate equal protection under the rational basis test because the arbitrary reduction of compensation without regard to the severity of the injury does not bear a rational relationship to the Legislature's stated interest in addressing the medical malpractice crisis.

**Arbitrariness of Classification**

In McCall, we concluded that the cap on wrongful death noneconomic damages imposed by section 766.118 arbitrarily diminished noneconomic damage awards based on the number of survivors and lacked a rational relationship to addressing the medical malpractice crisis.  The Fourth District below determined that the reasoning in McCall mandated a holding that the statutory caps in section 766.118 were similarly unconstitutional in personal injury actions because the reasoning of the plurality and concurring in result opinions struck at the

- 14 -

"underpinning of the Legislature's cap on noneconomic damages in general."
Kalitan, 174 So. 3d at 413.  Based on the agreement between the plurality and
concurring in result opinions in McCall that there is no evidence of a continuing
medical malpractice crisis justifying the arbitrary application of the statutory cap,
we reach the same conclusion with regard to the unconstitutionality of the caps in
the present case.

After the plurality opinion in McCall presented the hypothetical describing
discrimination between slightly and severely injured plaintiffs under a statutory
provision, it observed that section 766.118 has the effect of saving a modest
amount for many by imposing devastating costs on the most grievously injured,
and those who sustain the greatest damage and loss.  McCall, 134 So. 3d at 903.
The plurality opinion concluded that reducing damages for the most grievously
injured is "not only arbitrary, but irrational, and . . . that it 'offends the
fundamental notion of equal justice under the law.' " Id. (quoting Phillipe, 769 So.
2d at 972).

Like the hypothetical statutory provision discussed in McCall, sections
766.118(2) and (3) create a similar distinction between classes of medical
malpractice victims, arbitrarily reducing the damages that may be awarded to the
most drastically injured victims.  Section 766.118(2) provides a cap of $500,000 in
noneconomic damages to a plaintiff who suffers from a practitioner's negligence

and increases the cap to $1 million in the event of death, permanent vegetative state, or "catastrophic injury" where a manifest injustice would occur unless increased damages are awarded. Similarly, section 766.118(3) provides a cap of $750,000 in noneconomic damages to a plaintiff who suffers from a nonpractitioner's negligence and increases the cap to $1.5 million in the event of death, permanent vegetative state, or "catastrophic injury" where a manifest injustice would occur unless increased damages are awarded.

Notably, within the definition of "catastrophic injury,"[3] in section 766.118(1)(a), the Legislature defined instances that range from amputation of a

---

3. Section 766.118(1)(a) defines "catastrophic injury" as:

[A] permanent impairment constituted by:

1. Spinal cord injury involving severe paralysis of an arm, a leg, or the trunk;

2. Amputation of an arm, a hand, a foot, or a leg involving the effective loss of use of that appendage;

3. Severe brain or closed-head injury as evidenced by:

a. Severe sensory or motor disturbances;
b. Severe communication disturbances;
c. Severe complex integrated disturbances of cerebral function;
d. Severe episodic neurological disorders; or
e. Other severe brain and closed-head injury conditions at least as severe in nature as any condition provided in sub-subparagraphs a.-d.;

4. Second-degree or third-degree burns of 25 percent or more of the total body surface or third-degree burns of 5 percent or more to the face and hands;

5. Blindness, defined as a complete and total loss of vision; or

- 16 -

hand to severe brain or closed-head injury. Thus, sections 766.118(2) and (3) impose equal caps on noneconomic damages in instances where a plaintiff suffers a permanent vegetative state, unquestionably a more serious injury, as in instances where a plaintiff suffers the amputation of a hand, if a court determines a manifest injustice would occur unless increased damages are awarded. Consequently, sections 766.118(2) and (3) set forth the same problematic scheme that the plurality opinion in McCall agreed created arbitrary and invidious discrimination between claimants.

To illustrate this example, we examine the hypothetical recovery of noneconomic damages for plaintiffs A, B, and C under sections 766.118(2) and (3). Plaintiff A suffers a moderate injury; therefore recovery is capped at $500,000 if caused by a practitioner and $750,000 if caused by a nonpractitioner. Plaintiff B suffers a statutorily defined "catastrophic injury," such as the loss of a hand; therefore recovery may be capped at $1 million if caused by a practitioner and $1.5 million if caused by a nonpractitioner. Plaintiff C suffers a drastic injury, such as a permanent vegetative state; therefore recovery is capped at $1 million if caused by

---

6. Loss of reproductive organs which results in an inability to procreate.

§ 766.118(1)(a), Fla. Stat.

- 17 -

a practitioner and $1.5 million if caused by a nonpractitioner. Under these circumstances, plaintiff A has the best chance of being fully compensated, plaintiff B may have a chance of being fully compensated, and plaintiff C has utterly no chance of being fully compensated. Clearly, under sections 766.118(2) and (3), plaintiff C's damages award is arbitrarily diminished, even though plaintiff C has suffered the most grievous injury.

The caps under section 766.118 do not pass the rational basis test because "[i]n the context of persons catastrophically injured by medical negligence, we believe it is unreasonable <u>and</u> arbitrary to limit their recovery in a speculative experiment to determine whether liability insurance rates will decrease." <u>McCall</u>, 134 So. 3d at 912 (quoting <u>Lucas</u>, 757 S.W.2d at 691). Moreover, we "fail to see how singling out the most seriously injured medical malpractice victims for less than full recovery bears any rational relationship to the Legislature's stated goal of alleviating the financial crisis in the medical liability insurance industry." <u>Univ. of Miami v. Echarte</u>, 618 So. 2d 189, 198 (Fla. 1993) (Barkett, C.J., dissenting).[4] Therefore, we agree with the Fourth District's conclusion:

---

4. While in <u>Echarte</u> this Court upheld the constitutionality of a noneconomic damages cap in medical malpractice arbitration proceedings, the dissenting opinion's discussion of the equal protection issue regarding the statute's creation of two classifications of medical malpractice victims proves insightful under the facts at issue.

So long as the caps discriminate between classes of medical malpractice victims, as they do in the personal injury context (where the claimants with little noneconomic damage can be awarded all of their damages, in contrast to those claimants whose noneconomic damages are deemed to exceed the level to which the caps apply), they are rendered unconstitutional by McCall.

Kalitan, 174 So. 3d at 413.

Accordingly, we conclude that the statutory caps in section 766.118 unreasonably and arbitrarily limit recovery of those most grievously injured by medical negligence.

## Rational Relationship to Legitimate State Objective

Although we conclude the arbitrary caps are not rationally related to alleviating the purported medical malpractice crisis, we nonetheless consider the legitimacy of the asserted state objective. In enacting section 766.118, the Florida Legislature found that "Florida [was] in the midst of a medical malpractice insurance crisis of unprecedented magnitude." Ch. 2003-416, § 1, Laws of Fla., at 4035. However, in McCall, we observed a lack of evidence demonstrating how the statutory cap alleviated this crisis, and thus determined that the cap failed the rational basis test. The plurality opinion cited evidence that showed an increase in income for insurance companies, yet declared that "[r]eports have failed to establish a direct correlation between damage caps and reduced medical malpractice premiums" that were intended to reduce instances of doctors leaving Florida, retiring early, or refusing to perform high risk procedures. McCall, 134

So. 3d at 910. The concurring in result opinion reiterated the plurality's observation that there is no mechanism in place to assure that savings are passed on from the insurance companies to the doctors in accordance with the stated purpose of alleviating the rising premiums. Id. at 919 (Pariente, J., concurring in result).

Furthermore, in McCall, we determined that even if the damages cap were rationally related to a legitimate government purpose when the statute was enacted, there is no evidence of a continuing crisis that would justify the arbitrary application of the statutory cap. Both the plurality and concurring in result opinions recognized that "[a] statute may be constitutionally valid when enacted but may become constitutionally invalid because of changes in the conditions to which the statute applies." Id. at 913 (quoting Ferdon ex rel. Petrucelli v. Wisconsin Patients Comp. Fund, 701 N.W.2d 440, 468 (Wis. 2005)); see also id. at 920 (Pariente, J., concurring in result) (quoting Mizrahi, 761 So. 2d at 1043 (Pariente, J., dissenting)). Moreover, the plurality opinion observed that "[a] law depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases or the facts change even though valid when passed." McCall, 134 So. 3d at 913 (quoting Chastleton Corp. v. Sinclair, 264 U.S. 543, 547-48, (1924)). The plurality opinion explained: "even if there had been a medical malpractice crisis in Florida at the turn of the century,

the current data reflects that it has subsided. No rational basis currently exists (if it ever existed) between the cap imposed by section 766.118 and any legitimate state purpose." Id. at 914. The concurring in result opinion agreed that there is no evidence of a continuing medical malpractice crisis that would justify the arbitrary reduction of damages. Id. at 921 (Pariente, J., concurring in result). Consequently, we approve the Fourth District's conclusion: "Because addressing the medical malpractice crisis was the Legislature's stated objective when passing section 766.118, if the objective no longer exists, then there is no longer a 'legitimate state objective' to which the caps could 'rationally and reasonably relate.' " Kalitan, 174 So. 3d at 411.

We note that Kalitan's reliance on McCall to establish that the statutory caps failed the rational basis test satisfied her burden of proving that the statute is not rationally related to a legitimate government interest. Accordingly, we hold that the arbitrary caps on personal injury noneconomic damages in sections 766.118(2) and (3) bear no rational relationship to a legitimate government interest.

## CONCLUSION

We conclude that the caps on noneconomic damages in sections 766.118(2) and (3) arbitrarily reduce damage awards for plaintiffs who suffer the most drastic injuries. We further conclude that because there is no evidence of a continuing medical malpractice insurance crisis justifying the arbitrary and invidious

- 21 -

discrimination between medical malpractice victims, there is no rational relationship between the personal injury noneconomic damage caps in section 766.118 and alleviating this purported crisis. Therefore, we hold that the caps on personal injury noneconomic damages provided in section 766.118 violate the Equal Protection Clause of the Florida Constitution.

Accordingly, we affirm the Fourth District's decision, and remand to the district court for further proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.
POLSTON, J., dissents with an opinion, in which CANADY and LAWSON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., dissenting.

Just as I dissented to the erroneous plurality and concurring in result decisions in Estate of McCall v. United States, 134 So. 3d 894 (Fla. 2014), I dissent to the majority's decision in this case. The majority continues to disregard our precedent's rational basis standard as well as the Legislature's policymaking role in our constitutional system. Under a proper rational basis analysis, the cap on noneconomic damages in section 766.118, Florida Statutes, easily passes constitutional muster.

The Florida Constitution guarantees that "[a]ll natural persons, female and male alike, are equal before the law." Art. I, § 2, Fla. Const. Our precedent has interpreted this provision consistently with interpretations of the equal protection clause in the federal constitution. See, e.g., Duncan v. Moore, 754 So. 2d 708, 712 (Fla. 2000). And because the classification alleged in this case does not involve a protected class or a fundamental right, this Court must employ the rational basis test. Id.

"Under a 'rational basis' standard of review a court should inquire only whether it is conceivable that the regulatory classification bears some rational relationship to a legitimate state purpose." Fla. High Sch. Activities Ass'n v. Thomas, 434 So. 2d 306, 308 (Fla. 1983). "The burden is upon the party challenging the statute or regulation to show that there is no conceivable factual predicate which would rationally support the classification under attack." Id. Furthermore, under the rational basis test, "[i]t is not the court's function to determine whether the legislation achieves its intended goal in the best manner possible, but only whether the goal is legitimate and the means to achieve it are rationally related to the goal." Loxahatchee River Envtl. Control Dist. v. Sch. Bd. of Palm Beach Cty., 496 So. 2d 930, 938 (Fla. 4th DCA 1986).

Here, when enacting the noneconomic damages cap in section 766.118, the Legislature found that Florida's medical malpractice crisis "threatens the quality

and availability of health care for all Florida citizens," that the "cost of medical malpractice insurance has increased dramatically during the past decade," and that "both the increase and the current cost are substantially higher than the national average." Ch. 2003-416, at § 1, Laws of Fla. The Florida Legislature concluded that physicians are forced "to practice medicine without professional liability insurance, to leave Florida, to not perform high-risk procedures, or to retire early from the practice of medicine." Id. The Florida Legislature also found that "there are certain elements of damage presently recoverable that have no monetary value, except on a purely arbitrary basis, while other elements of damage are either easily measured on a monetary basis or reflect ultimate monetary loss" and that "the high cost of medical malpractice claims can be substantially alleviated by imposing a limitation on noneconomic damages in medical malpractice actions." Id.

No one disputes that increasing the availability, quality, and affordability of healthcare in Florida constitutes a legitimate state interest. This Court also has acknowledged that a medical malpractice insurance crisis constitutes a legitimate state interest under the rational basis test. See Mizrahi v. N. Miami Med. Ctr., Ltd., 761 So. 2d 1040, 1042 n.3 (Fla. 2000); Univ. of Miami v. Echarte, 618 So. 2d 189, 196-97 (Fla. 1993). Furthermore, the Legislature's policy choice of a cap on noneconomic damages is rationally related to these legitimate state interests because "limiting claims that may be advanced by some claimants would

- 24 -

proportionally limit claims made overall and would directly affect the cost of providing health care by making it less expensive and more accessible." Mizrahi, 761 So. 2d at 1043. Therefore, applying the proper rational basis test, it is clear that the statutory cap does not violate Florida's guarantee of equal protection.

Importantly, under the proper rational basis test, it is immaterial that the majority of this Court disagrees with the Legislature's evidence regarding whether there was (or currently is) a medical malpractice crisis in Florida. It is also immaterial that a majority of this Court questions whether the Legislature's policy choice of enacting a cap on noneconomic damages has resulted in insurance companies passing along savings to their physician customers.

Instead, under the rational basis test, "[t]he burden is upon the party challenging the statute . . . to show that there is no conceivable factual predicate which would rationally support the classification under attack." Fla. High Sch. Activities Ass'n, 434 So. 2d at 308. In fact, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 315 (1993). "A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification." Heller v. Doe, 509 U.S. 312, 320 (1993). Thus, under the dictates of the rational basis test, if we can conceive of a possible factual predicate that provides a rational basis in furtherance of a legitimate state

- 25 -

interest, the statute does not violate the constitutional guarantee of equal protection.

Applying the proper rational basis standard, as I explained in my dissent in McCall,

> the Florida Legislature could have rationally believed that the cap on noneconomic damages under section 766.118(2)(b) would reduce malpractice damage awards, which would thereby increase predictability in the medical malpractice insurance market and lead to reduced insurance premiums. Then, as a result of decreased insurance premiums, physicians would be more willing to stay in Florida and perform high-risk procedures at a lower cost to Floridians.

134 So. 3d at 930 (Polston, J., dissenting) (footnote omitted); see also M.D. v. United States, 745 F. Supp. 2d 1274, 1281 (M.D. Fla. 2010) ("A cap applicable to each occurrence, in cooperation with caps individually applicable to each claimant, reduces damage awards as a matter of mathematical certainty, enhances needed predictability, places a calculable limit on the exposure of healthcare and insurance providers, reduces malpractice insurance premiums, and promotes the availability of quality healthcare."). Additionally, "the Legislature simply may have felt that it was fairer to malpractice plaintiffs in general to reduce only the very large noneconomic damage awards, rather than to diminish the more modest recoveries for pain and suffering and the like in the great bulk of cases." Fein v. Permanente Med. Grp., 695 P.2d 665, 683 (Cal. 1985); see also Smith v. Botsford Gen. Hosp., 419 F.3d 513, 520 (6th Cir. 2005) ("By limiting at least one component of health

care costs, the noneconomic damages limitation is rationally related to its intended purpose." (quoting Zdrojewski v. Murphy, 657 N.W.2d 721, 739 (Mich. Ct. App. 2002))); Boyd v. Bulala, 877 F.2d 1191, 1197 (4th Cir. 1989) (holding that statutory cap on all damages, including noneconomic damages, does not violate equal protection because it "bears a reasonable relation to a valid legislative purpose—the maintenance of adequate health care services in the Commonwealth of Virginia"); Davis v. Omitowoju, 883 F.2d 1155, 1158 (3d Cir. 1989) ("Clearly[,] the Virgin Island's decision to curb, through legislation, the high costs of malpractice insurance and thereby promote quality medical care to the residents of the islands, provides a rational basis for capping the amount of damages that can be awarded a plaintiff."); Lucas v. United States, 807 F.2d 414, 422 (5th Cir. 1986) ("Lucas has failed to convince us that there is no reasonable basis for the Texas legislature to conclude that this ceiling on recovery . . . is not conceivably related to the availability and cost of malpractice insurance and that such insurance and the distribution of medical care in Texas are not conceivably linked."); Hoffman v. United States, 767 F.2d 1431, 1437 (9th Cir. 1985) ("It was reasonable for the lawmakers to believe that placing a ceiling on noneconomic damages would help reduce malpractice insurance premiums.").

Accordingly, the cap on noneconomic damages in medical malpractice actions is rationally related to the legitimate state interest of increasing the

- 27 -

affordability, availability, and quality of medical care in Florida.  Therefore, under the proper rational basis test that our long-standing precedent requires, the cap in section 766.118 passes constitutional muster.

Moreover, as I explained in my dissent in McCall, the statutory "limitations on noneconomic damages are part of an overall legislative plan enacted in 2003 to address the rising costs of medical liability insurance and the affordability and availability of healthcare in Florida[:]"

> Other components of the plan include new healthcare facilities regulations, insurance regulation, license requirements, and agency requirements.  [See ch. 2003-416, Laws of Fla.]
>
> The legislative effort began with the convening of the House Select Committee on Medical Liability Insurance, which "conducted an inquiry into the possible causes and potential solutions to the vexing problems associated with the availability of medical liability insurance in Florida."  Fla. H. Select Comm. on Med. Liab. Ins., Select Comm. on Med. Liab. Ins. Rep., at 2 (March 2003) (available at Fla. Dept. of State, Fla. State Archives, Tallahassee, Fla.).  The Select Committee examined "how the reduced availability of affordable medical liability insurance affects the availability of medical services" and was "mindful of the need to maintain the right of access to redress when citizens are harmed during the delivery of medical services."  Id. at 3.  The Select Committee held a series of meetings in Tallahassee, held four hearings outside the capital, and published an 82 page report (not including appendices).  Id.  It "received testimony from experts in each of the professional areas impacted" and reviewed records from efforts to address prior crises.  Id. at 4.
>
> The Select Committee also reviewed the record of the Governor's Select Task Force on Health Care Professional Liability Insurance, which produced a "345 page report as well as thirteen volumes of supportive materials."  Id. at 9.  The Governor's Task Force "undertook a comprehensive review of published studies and relevant literature" and held ten meetings at which it received

extensive testimony and information.  Gov.'s Select Task Force on Healthcare Prof. Liab. Ins., <u>Gov.'s Task Force on Healthcare Prof. Liab. Ins. Rep.</u>, at 3, iv (2003).

134 So. 3d at 924-25 (Polston, J., dissenting).

The majority just discards and ignores all of the Legislature's work and fact-finding.  But, under our constitutional system, it is the Legislature, not this Court, that is entitled to make laws as a matter of policy based upon the facts it finds.  <u>See</u> art. II, § 3, Fla. Const.; art. III, § 1, Fla. Const.  It is the Legislature's task to decide whether a medical malpractice crisis exists, whether a medical malpractice crisis has abated, and whether the Florida Statutes should be amended accordingly.  For a majority of this Court to decide that a crisis no longer exists, if it ever existed, so it can essentially change a statute and policy it dislikes, improperly interjects the judiciary into a legislative function.

I respectfully dissent.

CANADY and LAWSON, JJ., concur.

An Appeal from the District Court of Appeal – Statutory or Constitutional Invalidity

Fourth District - Case Nos. 4D11-4833, 4D11-4834, & 4D11-4806

(Broward County)

Mark Hicks and Dinah Stein of Hicks, Porter, Ebenfeld & Stein, P.A., Miami, Florida,

for Appellants North Broward Hospital District d/b/a Broward General Medical Center, Rob Alexander, M.D., Edward Punzalan, CRNA and ANESCO North Broward, LLC

Thomas A. Valdez and Jeffrey R. Creasman of Quintairos, Prieto, Wood & Boyer, P.A., Tampa, Florida,

for Appellants Barry University, Inc., and Eleidy Miedes, SRNA

Crane A. Johnstone and Scott P. Schlesinger of Schlesinger Law Offices, P.A., Fort Lauderdale, Florida; and Philip M. Burlington and Nichole J. Segal of Burlington & Rockenbach, P.A., West Palm Beach, Florida,

for Appellee

Pamela Jo Bondi, Attorney General, and Osvaldo Vazquez, Deputy Solicitor General, Tallahassee, Florida,

for Amicus Curiae State of Florida

Mark K. Delegal and Tiffany A. Roddenberry of Holland & Knight LLP, Tallahassee, Florida; and William W. Large of Florida Justice Reform Institute, Tallahassee, Florida,

for Amici Curiae Florida Justice Reform Institute and Florida Hospital Association, Inc.

Tracy Raffles Gunn of Gunn Appellate Practice, P.A., Tampa, Florida,

for Amicus Curiae Florida Justice Association