# Third District Court of Appeal

## State of Florida

Opinion filed November 23, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-1802
Lower Tribunal No. 12-43765
_____


**Rolando D. Rodriguez, et al.,**
Appellants,

vs.

**Ocean Bank, etc.,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Antonio Arzola, Judge.

Perez & Rodriguez, and Javier J. Rodriguez, Johanna Castellon-Vega and Freddy X. Muñoz, for appellants.

Piedra & Associates and Jeremy A. Koss, for appellee.


Before SUAREZ, C.J., and SHEPHERD and SALTER, JJ.

SALTER, J.

Rolando D. Rodriguez and Patricia Caballero-Rodriguez appeal a summary final judgment in favor of Ocean Bank (a) for a deficiency of $196,495.01 following a sale of the Rodriguezes' property and (b) on the Rodriguezes' counterclaims against Ocean Bank for wrongfully withholding most of the insurance proceeds held by the Bank after the residence was damaged in a fire. Applying the stringent standards of review applicable to summary judgments, we find that the Rodriguezes' affirmative defenses and counterclaims presented triable issues of fact, and we reverse the summary final judgment.

Factual and Procedural Background

In 2007, the Rodriguezes purchased a home in Miami Beach. They secured a residential first mortgage loan from Ocean Bank in the principal amount of $840,000.00. On November 26, 2008, the home was destroyed by fire. The Rodriguezes' homeowner insurance policy with Citizens Property Insurance Corporation ultimately paid $501,415.24 on the Rodriguezes' claim. This amount was paid into an escrow account at Ocean Bank pursuant to the following terms within paragraph 5 of the mortgage:

> Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that

2

such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds, and shall be the sole obligation of the Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In December 2008, and continuing through August 2011, the Rodriguezes obtained permits, architectural plans, and contractor bids in order to rebuild their home. Ocean Bank approved disbursement of a portion of the insurance proceeds held in escrow by Ocean Bank, approximately $157,000.00, for that purpose. During this period, the Rodriguezes continued to make the required payments on the loan.[1] Thereafter, however, Ocean Bank's inspector estimated that the cost of reconstruction would exceed the remaining insurance proceeds in escrow by approximately $74,000.00. In a letter in October 2011, Ocean Bank notified the Rodriguezes that Ocean Bank would not disburse additional funds until this

---

[1] Any delays caused by Ocean Bank during this period resulted in additional interest charged and collected by Ocean Bank. The interest paid by Ocean Bank on the escrowed insurance proceeds (and merely added to the restricted account) was approximately 0.5% per annum, while loan statements in the record indicate the loan balance was accruing interest at a rate over 6% per annum greater than that rate.

alleged shortfall was deposited by them into the escrow account. The Rodriguezes disagreed that there was a shortfall and declined to make such a payment.

When the parties disagreed regarding Ocean Bank's estimate and demand for additional deposits to the escrow account, they began negotiations toward a modification of the loan terms. Early in the negotiations, Ocean Bank's legal counsel and legal managing attorney noted in an email that the preliminary negotiations were for settlement purposes only, and that nothing would be binding "unless and until there is a written agreement between us which is executed by you and your wife and by an officer of Ocean Bank."

On February 5, 2012, the parties entered into a Loan Modification Agreement (the "LMA") providing the following terms pertinent to this appeal:

1. From October 2011, and for a period of three years, Ocean Bank was to reduce the interest rate on the loan to a fixed rate of 4.25% per annum.

2. The Bank would apply the entire remaining escrow balance, $348,794.20, to reduce the loan balance.[2]

3. The LMA provided "[e]xcept as stated herein, all of the terms, conditions, specific clauses, and paragraphs of the [mortgage] shall remain in full force and effect and are hereby ratified and confirmed," and

---

[2] Ocean Bank was to apply $340,000.00 to reduce principal and $8,794.20 to reduce unpaid interest. The Rodriguezes were required to make a further payment of outstanding interest from their own funds by January 1, 2012, and they made that payment as well.

4

"[n]othing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and [mortgage]."

What it did not include, however, was any waiver of claims, affirmative defenses, or counterclaims by the Rodriguezes relating to the delays and demands made by Ocean Bank regarding the escrowed insurance proceeds and the alleged cost to complete construction.

The LMA did not resolve the disagreements between the parties regarding the path forward—whether to list the mortgaged property, including the permits and construction documents, for sale,[3] and whether Ocean Bank would seek a deficiency judgment if the sale produced net proceeds insufficient to pay the remaining balance of the loan in full. When further negotiations were unavailing, the Rodriguezes began efforts to sell the property but stopped making interest payments to Ocean Bank. Ocean Bank commenced an action to foreclose the mortgage and to collect any deficiency under the promissory note in November of 2012.

The following month, and without a waiver of rights by either side,[4] the Rodriguezes sold the property for $365,000.00, and Ocean Bank applied the net

---

[3] A "short sale" ordinarily involves a consensual sale for a net proceeds amount acknowledged by the lender and borrower/owner to be less than the outstanding loan balance. Such agreements may or may not include an agreement by the lender to waive any resulting deficiency.

[4] The Bank approved the sale after obtaining a signed "Acknowledgment of

proceeds to reduce the principal balance of the loan to approximately $150,000.00. Ocean Bank then voluntarily dismissed its mortgage foreclosure count, but continued to prosecute a deficiency claim under Count II, its claim under the note.

In response, the Rodriguezes raised affirmative defenses and counterclaims based on Ocean Bank's alleged failure to mitigate damages, breaches of contract, estoppel, and misrepresentation.

Ocean Bank and the Rodriguezes filed cross-motions for summary judgment and affidavits in opposition. In July 2015, the trial court heard the motions, granted Ocean Bank's motion, denied the Rodriguezes' motion, and entered a final summary judgment against the Rodriguezes for a total of $196,495.01.[5] This appeal followed.

Analysis

"In ruling on a motion for summary judgment, the trial court (and this Court in its <u>de novo</u> review) must construe all the evidence, and draw every possible inference therefrom, in a light most favorable to the non-moving party." <u>JVN</u>

_____

Borrower(s)" in which the Rodriguezes agreed that Ocean Bank was not waiving any rights to claim a deficiency judgment against them following the sale. Importantly, however, the "Acknowledgment" did not include any term whereby the Rodriguezes released or waived any of <u>their</u> rights or remedies against Ocean Bank.

[5] The final summary judgment also denied any relief to the Rodriguezes under their counterclaims.

Holdings, Inc. v. Am. Constr. & Repairs, LLC, 185 So. 3d 599, 600 (Fla. 3d DCA 2016).

The affidavits of the Rodriguezes in opposition to Ocean Bank's motion for summary judgment provide a chronology of Ocean Bank's control over their insurance proceeds: the Bank's early determination that the rebuilding effort was economically feasible and disbursement of limited funds from the restricted escrow account; the alleged incorrectness of the Bank's inspector's construction cost estimates; the allegedly improper demand for the Rodriguezes to deposit additional funds to the restricted account before any disbursements would be allowed; the effect of Ocean Bank's delays on the mounting loan balance; and the Rodriguezes' ultimate loss of their own personal funds used to keep interest current and to fund preconstruction expenses that were not released by Ocean Bank from the restricted escrow account.

Regarding the question of whether the 2012 LMA amounted to a release or waiver of the Rodriguezes' claims, affirmative defenses, and counterclaims against the Bank, the Rodriguezes' affidavits denied any intention to release or waive their rights, and they pointed to the terms of the LMA which left Ocean Bank in the same position (i.e., not waiving or releasing Ocean Bank's claims or defenses vis-à-vis the Rodriguezes).

In contrast, the Ocean Bank officer's affidavit in support of Ocean Bank's motion for summary judgment conceded the central chronology of facts pertaining to the escrowed insurance proceeds and the refusal to make further disbursements. In support of Ocean Bank's "release or waiver" position, the officer's affidavit referred to and attached emails "making three settlement proposals." Any such proposals were not, of course, admissible[6] or eligible for consideration as "summary judgment evidence" under Florida Rule of Civil Procedure 1.510(c). Moreover, and as already noted, the Bank's legal counsel and legal managing attorney had noted at the outset of those email communications that the preliminary negotiations were for settlement purposes only, and that nothing would be binding "unless and until there is a written agreement between us which is executed by you and your wife and by an officer of Ocean Bank."

Turning next to the central question—whether the LMA or short sale "Acknowledgment of Borrower(s)" effected a release or waiver of the Rodriguezes' claims, affirmative defenses, and counterclaims, it is apparent that they did not. "[W]aiver is the intentional or voluntary relinquishment of a known right." Popular Bank of Fla. v. R.C. Asesores Financieros, C.A., 797 So. 2d 614, 619 (Fla. 3d DCA 2001). In order to constitute an express waiver of rights in a contract, the language must be clear and unambiguous, or sufficient to lead to no

---

[6] § 90.408, Fla. Stat. (2012).

8

other conclusion. De Campos v. Ferrara, 90 So. 3d 865, 869 (Fla. 3d DCA 2012). Waiver by conduct, on the other hand, is an issue for the finder of fact on a record such as this. Popular Bank, 797 So. 2d at 619; Clear Channel Metroplex, Inc. v. Sunbeam Television Corp., 922 So. 2d 229, 232 (Fla. 3d DCA 2005).

Typically, a loan modification, forbearance, or so-called "workout agreement" like the LMA includes explicit waiver and release provisions signifying that the borrowers are abandoning any claims and defenses that relate to acts and omissions pre-dating the agreement. See In re Holywell Corp., 49 B.R. 694 (Bankr. S.D. Fla. 1985). In the present case, however, Ocean Bank was careful to preserve its pre-existing rights under the loan documents, and it did not require the Rodriguezes to waive or release their own claims relating to pre-LMA matters. Each side agreed to certain terms in order to reduce the sum in controversy and eliminate certain issues, but each side also preserved its respective right in the future to prosecute a deficiency claim (Ocean Bank) or to oppose that claim and seek damages for prior wrongful acts (the Rodriguezes).

Lender liability for the wrongful refusal to disburse funds, imposition of extra-contractual conditions, or delay of construction is now an established feature of Florida law. See generally Florida Real Property Litigation §§ 8.32, 8.42, 8.44 (6th ed. 2011); Lentz v. Cmty. Bank of Fla., Inc., 41 Fla. L. Weekly D629 (Fla. 3d DCA Mar. 9, 2016). Although we express no opinion regarding the merits of the

9

Rodriguezes' affirmative defenses and counterclaims, those pleadings are not insufficient as a matter of law,[7] they were supported by competent affidavits in opposition to the Bank's motion for summary judgment, and they establish genuine issues of material fact for resolution at trial.

The summary final judgment is reversed and remanded for further proceedings consistent with this opinion.

---

[7] The trial court denied Ocean Bank's motion to strike five of the Rodriguezes' eight amended affirmative defenses and denied Ocean Bank's motion to dismiss as to all three of their counterclaims.