# Third District Court of Appeal

## State of Florida

Opinion filed August 8, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1553
Lower Tribunal No. 13-5691
_____

## Francisco Pijuan, et al.,
Appellants,

vs.

## Bank of America, N.A.,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Eugene J. Fierro, Senior Judge.

Loan Lawyers, LLC, and Chase E. Jenkins (Fort Lauderdale), for appellants.

Liebler, Gonzalez & Portuondo, and Adam M. Topel, for appellee.

Before LAGOA, LOGUE and SCALES, JJ.

SCALES, J.

Appellants, defendants below, Francisco, Luisa, Francisco Jr. and Sonia Pijuan ("Pijuan")[1] appeal the final foreclosure judgment entered in favor of

_____

[1] We refer to the four appellants collectively as Pijuan, while noting their different

appellee, plaintiff below, Bank of America ("BOA"). After conducting a bench trial on BOA's foreclosure complaint, the trial court found that BOA's predecessor, Countrywide Home Loans, Inc., had entered into a loan modification agreement ("LMA") that constituted a novation of the original loan documents. Notwithstanding this finding (which BOA has not cross-appealed), the trial court entered a foreclosure judgment against Pijuan that failed to consider the effect of its novation finding on the foreclosure case pled and proven by BOA. We conclude that, under the facts of this case, once the trial court made the finding that the LMA replaced the original loan, then BOA could not prevail without having pled and proven a breach of the LMA.

**I. Relevant Facts and Procedural Background**

In December of 2006, Countrywide loaned Francisco and Luisa Pijuan $410,000. The loan was memorialized by an adjustable rate promissory note, and was secured by a mortgage encumbering Miami Beach real property owned by Pijuan. Pursuant to the terms of the note, Pijuan was required to make monthly principal and interest payments of $2,050.00 to Countrywide.

In March of 2009, Pijuan received a letter from Countrywide notifying Pijuan that Countrywide had approved a loan modification. In order for the

modification to be valid, the LMA (enclosed with the letter) would need to be
roles in the events underlying this litigation. All four of the Pijuans executed the mortgage; however, only Francisco and Luisa executed the note and LMA.

2

signed by Francisco and Luisa and returned to Countrywide. Pursuant to the LMA, Pijuan's monthly payment was adjusted down from $2,050.00 to $1,630.51, effective with the payment due on May 1, 2009. The LMA required compliance with all other covenants of the original documents not altered or amended by the LMA. The LMA did not alter or amend the condition precedent requirements of the mortgage's paragraph 22.[2]

Francisco and Luisa executed the LMA and, on or about March 12, 2009, mailed it to Countrywide. From approximately April 20, 2009, through October 13, 2010, Pijuan, consistent with the LMA's payment terms, made eighteen monthly payments of $1,630.51, totaling $29,349.36.

Sometime later in 2009, BOA assumed the Pijuan note and mortgage from Countrywide. Notwithstanding Pijuan's return of the executed LMA to BOA, and Pijuan's eighteen monthly payments made pursuant to the LMA's payment terms, BOA, on December 31, 2010, sent a default letter to Pijuan asserting a November 1, 2009 default date. In this default letter ("BOA's Notice"), BOA instructed Pijuan that BOA must receive a payment of $42,523.45 prior to January 31, 2011, in order to "cure" this asserted default. BOA's Notice did not mention the LMA, much less assert any default under the LMA. Consistent with BOA's Notice, in

---

[2] Paragraph 22 of the December 2006 mortgage requires, as a condition precedent to acceleration and foreclosure, the mortgagee to provide notice to the mortgagor specifying, among other things, the specific default and cure amount.

February 2013, BOA filed the instant suit alleging a default not of the LMA, but of the December 2006 note and mortgage. BOA's verified complaint identified November 1, 2009 as the default date "on the Mortgage Note and Mortgage." Paragraph 9 of BOA's complaint, which was denied by Pijuan, alleged that BOA had performed all conditions precedent to acceleration. As an affirmative defense to BOA's foreclosure action, Pijuan asserted that BOA did not perform a condition precedent because BOA failed to provide proper default notice as required by the mortgage. Pijuan also filed a motion for leave to add an additional affirmative defense specifically relating to the failure of BOA to acknowledge the existence of the LMA.

While Pijuan's motion seeking leave to add this affirmative defense was not heard before trial, the issue of whether the LMA constituted a novation of the original loan was tried by the parties' consent.

The bench trial, conducted in May of 2016, focused almost exclusively on whether, by virtue of the March 2009 LMA and subsequent payments consistent therewith, the parties had modified the December 2006 loan documents. BOA argued that, while it had received the executed LMA from Pijuan and credited Pijuan's account for Pijuan's payments made pursuant to the LMA, neither BOA nor Countrywide ever had approved the modification nor had either entity actually executed the document. BOA argued that the document therefore was ineffective.

4

At the end of the trial, the court specifically found, as a factual matter, that the parties had entered into the LMA in March of 2009, and that the LMA constituted a novation of the original December 2006 loan documents. The trial court, though, rejected Pijuan's counsel's argument that, upon finding a loan modification existed, BOA's foreclosure case should be dismissed under the authority of Kuehlman v. Bank of America, N.A., 177 So. 3d 1282, 1283 (Fla. 5th DCA 2015) (holding that when a loan is modified a lender can foreclose only by pleading and proving a breach of the modification agreement). Rather, despite no allegation by BOA of any breach of the LMA, nor any allegation or proof that BOA had complied with the conditions precedent for suing Pijuan under the LMA, the trial court found that Pijuan had breached the LMA, and entered the subject foreclosure judgment, simply crediting Pijuan with the $29,349.36 that Pijuan had paid pursuant to the LMA. It is from this judgment that Pijuan timely appeals.

**II. Discussion**

The trial court found that the LMA constituted a novation;[3] that is, the original loan documents had been modified by the subsequent LMA. This finding has not been challenged on cross appeal by BOA. We follow the persuasive precedent of our sister courts in holding that, when a loan modification agreement

---

[3] A novation is a separate and new agreement, discharging an existing obligation and substituting a new one. See Ades v. Bank of Montreal, 542 So. 2d 1013, 1014 (Fla. 3d DCA 1989).

has been reached, a lender can foreclose only by both pleading and proving a breach of the modification agreement. <u>Nowlin v. Nationstar Mortg., LLC</u>, 193 So. 3d 1043, 1046 (Fla. 2d DCA 2016); <u>Kuehlman</u>, 177 So. 3d at 1283.

In this case, BOA pleaded a default under the December 2006 loan documents, and its trial proofs, including its evidence of compliance with all required contractual conditions precedent to acceleration and foreclosure, were based exclusively on Pijuan's alleged breach of the December 2006 loan documents. BOA vigorously contested the effectiveness of the LMA, and certainly never pleaded or attempted to prove a default thereunder; nor did BOA plead or prove that BOA had complied with the conditions precedent to sue Pijuan under the LMA.[4] Therefore, when the trial court concluded that the LMA constituted a novation, and that the LMA replaced the inconsistent provisions of the original note, BOA's foreclosure case – premised entirely on BOA's allegations and proof that Pijuan breached the December 2006 loan documents, rather than the LMA – failed. <u>Nowlin</u>, 193 So. 3d at 1046.[5] As argued by Pijuan's counsel, upon finding

[4] Indeed, such proof would have undermined BOA's principal argument that the LMA was ineffective.

[5] Citing dialogue between Pijuan's counsel and the trial court, the dissent argues that, in trying the novation issue by consent, Pijuan necessarily (or impliedly) waived both (i) BOA's obligation to plead and prove compliance with all conditions precedent related to a breach of the LMA, and (ii) Pijuan's affirmative defense asserting that BOA did not provide proper default notice to Pijuan. Waiver is the voluntary and intentional relinquishment of a known right. <u>Caraffa v.</u>

that the LMA constituted a novation of the December 2006 loan documents, the trial court should have involuntarily dismissed BOA's case.

We reverse the trial court's final foreclosure judgment for BOA and remand with instructions to enter an involuntary dismissal of BOA's case.

Reversed and remanded, with instructions.

LAGOA, J., concurs.

Francisco Pijuan v. Bank of America
Case No. 3D16-1553

LOGUE, J. (dissenting)

I respectfully dissent. Although the trial court entered a final judgment of foreclosure after a full trial on the merits, the majority reverses because the Bank's complaint alleged only a default of the original loan—not a default of the loan modification. While the majority is correct that the Bank did not allege a default

_____

Carnival Corp., 34 So. 3d 127, 130 (Fla. 3d DCA 2010). The language of waiver must be clear and unequivocal. See, e.g., Rodriguez v. Ocean Bank, 208 So. 3d 221, 225 (Fla. 3d DCA 2016). From our review of the record, it does not appear that Pijuan, at any time, expressly or impliedly waived the requirement that BOA plead and prove compliance with conditions precedent. Indeed, in our view, the record reflects just the opposite: immediately after the trial court announced its novation determination, Pijuan's counsel argued that dismissal was required based on Kuehlman precisely because of BOA's default notice infirmities.

of the loan modification, it ignores the Borrowers' failure to raise the loan modification as an affirmative defense which, as explained below, was their burden.

More importantly, the majority's focus on the pleadings misses the point. The Bank and the Borrowers consented by word and act to try both the issue of whether a modification existed and whether the Borrowers had breached the modification. Indeed, it was the Borrowers who offered into evidence their payments under the loan modification and the fact that they stopped payments. The Borrowers' position at trial was that they were excused from making payments during the foreclosure litigation. Because the trial court rightly rejected that defense, the final judgment of foreclosure should be affirmed.

At the beginning of trial, the trial court asked both the Bank and the Borrowers to frame the issues to be tried. The parties agreed the focus of the trial should be whether there was a loan modification and whether there was a default under the loan modification. The following exchange took place:

> The Court:  Okay. Counsel, do you see the issues—any other issues other than those raised?
>
> Bank's Counsel:  I do not, Judge. In fact, I think <u>the only real issue is going to be the application of payment on some alleged loan modification</u>.
>
> Borrowers' Counsel: That's correct, Your Honor. <u>I think that's the heart of the issue</u>.

8

(Emphasis added.) At the end of the exchange, Borrowers' counsel again confirmed that the two issues to be tried concerned whether there was a modification and "how much was paid towards it and whether those payments were properly applied":

> The Court: So is the issue, as counsel framed it, a question of how much?
>
> Borrowers' Counsel: Whether there's a modification and how much was paid—how much was paid towards it and whether those payments were properly applied.

(Emphasis added.)

At trial, the Bank maintained there was no loan modification because the Bank never signed a modification contract. To prove the Bank agreed to the unsigned modification, the Borrowers presented evidence that they made eighteen payments from April 2009 to October 2010 in the amount specified in the loan modification and the Bank accepted those payments.

Without objection, the Borrowers also admitted to stopping payments after October 2010. They stopped payments because they believed they did not have to pay during the foreclosure litigation:

> The Court: Now, six years, no payments?
>
> Pijuan: Yes, sir.
>
> Court: No taxes?

9

Pijuan: Nothing.

The Court: No insurance?

Pijuan: Nothing.

. . . .

The Court: I want to know why you sat there for six years with no payment living there, no taxes, no insurance.

Pijuan: Well, <u>I was told that</u>, you know, that's how it was going to—you know, <u>they were going to be paying everything for now until the case was resolved</u>.

Based on this unobjected-to testimony, the trial court noted that "there's two wrongs here," and "this is not good for either of you." He ruled against the Bank and found that a loan modification existed, pointing to the Bank's acceptance of eighteen payments in the amount of the loan modification. He then found the Borrowers had defaulted under the loan modification based upon their own admission. The court then entered a final judgment of foreclosure that fully credited the Borrowers for all payments made under the original loan and the loan modification.

If the parties had not tried by consent the issue of the loan modification, the judgment of foreclosure would still be proper. The Borrowers' main defense was the loan modification, but they never raised it as an affirmative defense.[6]  It was

---

[6] While Pijuan filed a motion for leave to add an additional affirmative defense relating to the Bank's failure to acknowledge the parties' loan modification

the Borrowers' "burden to plead the existence of a modification or forbearance agreement as an affirmative defense." <u>Rouffe v. CitiMortgage, Inc.</u>, 241 So. 3d 870, 873 (Fla. 4th DCA 2018). Since they failed to raise the loan modification as an affirmative defense, they technically waived it. <u>Bank of New York Mellon for Certificateholders of CWABS, Inc., Asset-Backed Certificates, Series 2005-BC5 v. Bloedel</u>, 236 So. 3d 1164, 1167 (Fla. 2d DCA 2018) ("The effect of a modification to a legal agreement, to the extent it would constitute an avoidance of all or part of a defendant's liability under the agreement, is an affirmative defense that must be pled and proven by the defendant.").

The Borrowers are saved from their technical waiver of the defense of a modification; but only because the issue of the modification was tried by consent. "The essence of the broad test generally applied to determine whether an issue has been tried by implied consent is whether the party opposing introduction of the issue into the case would be unfairly prejudiced thereby." <u>Smith v. Mogelvang</u>, 432 So. 2d 119, 122 (Fla. 2d DCA 1983). The Borrowers were not only on notice of the issues relating to the loan modification (it was their main defense), they expressly agreed to try these issues and provided the evidence of the payments and default under the loan modification. They cannot now be heard to argue the issues were not raised in the pleadings. "When issues not raised by the pleadings are tried

agreement, that motion was never heard and never ruled upon.

11

by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Fla. R. Civ. P. 1.190(b).

These facts bring this case out of the ambit of the cases relied upon by the majority. In Nowlin v. Nationstar Mortgage, LLC, 193 So. 3d 1043 (Fla. 2d DCA 2016), the borrowers raised the modification as an affirmative defense and denied breaching the modification. In Kuehlman v. Bank of America, N.A., 177 So. 3d 1282, 1283 (Fla. 5th DCA 2015) the Fifth District expressly held the breach of the loan modification was not tried by consent.

Accordingly, the final judgment should be affirmed.